## UNITED STATES *v.* THOMPSON.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 250.   Argued January 27, 28, 1920.—Decided March 1, 1920.

A judgment of the District Court sustaining a so-called motion to quash, which in effect bars the United States from further prosecuting the alleged offense under the same or any other indictment, depriving the district attorney and the grand jury of their lawful powers over the subject, is subject to review by this court under the Criminal Appeals Act as a "judgment sustaining a special plea in bar." P. 412.

The grand jury has power to inquire into and indict upon a charge which has previously been examined and ignored by another grand jury; the United States attorney has power to invoke such a re-examination; and the exercise of these powers is not subject to be denied at the discretion of the District Court. P. 413.

Hence, a judgment quashing an indictment because the United States attorney did not obtain permission from the court to make the re-

submission to the grand jury upon which the indictment was obtained is erroneous, as invading the functions of the United States attorney and those of the grand jury. P. 413.

The rule governing this subject is general, based on the common law and the decisions of this court, and is not subject to the decisions or statutes of the State in which the offense is committed and prosecuted. P. 415.

Section 722 of the Revised Statutes, in the criminal cases to which it relates, adopts the state practice only in the absence of a federal rule governing the matter in question. *Id.*

Applications for writs of mandamus and prohibition to control the District Court. are disallowed when the relief sought is afforded through a writ of error. P. 417.

Reversed.

THE case is stated in the opinion.

*Mr. W. C. Herron,* with whom *The Solicitor General* and *Mr. Assistant Attorney General Stewart* were on the brief, for the United States.

*Mr. J. E. B. Cunningham,* with whom *Mr. R. M. Gibson* and *Mr. W. C. McKean* were on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The Comptroller of the Currency, in January, 1915, closed the doors of the First National Bank of Uniontown, Pennsylvania. At the opening of the November term, 1915, of the court below, sitting at Pittsburgh, the attention of the grand jury was called by the court to alleged criminal acts connected with the administration of the affairs of the bank, and, following an investigation, the district attorney submitted to the grand jury a proposed indictment charging Thompson, the president of the bank, in forty-seven counts with violations of the Na-

tional Bank Act. The grand jury having concluded to indict only for the first seventeen of said counts, the district attorney prepared an indictment embracing them and withdrew the other thirty from consideration. The bill thus drawn was submitted to the grand jury, by it presented as a true bill, and was ordered filed.

On March 17, 1916, the Attorney General of the United States, pursuant to the Act of June 30, 1906, c. 3935, 34 Stat. 816, appointed a special assistant for the purpose of coöperating with the district attorney in the matter of the steps to be taken to procure the indictment of Thompson. The next session of the court was held in March, 1916, at Erie, and the district attorney and the assistant to the Attorney General, without asking authority of the court, directed the attention of the grand jury to the charges against Thompson covered by the counts as to which the grand jury at Pittsburgh had failed to make a presentment, and, after hearing witnesses called by the district attorney, the Erie grand jury, on the 24th day of March, found a true bill containing thirty counts covering such charges. When this indictment was presented the court expressed doubt, in view of the fact that the charges had been submitted to a previous grand jury and no presentment had been made, whether there was any authority in the Erie grand jury, at the instance of the district attorney, to consider such charges without previously obtaining the consent of the court. However, the court observed that, as the grand jury had reported a true bill, it would be placed on file, with the reservation of a right to take such future action regarding it as might be deemed appropriate.

Both indictments went upon the calendar for hearing, but that result was postponed from time to time in order to afford the accused an opportunity to prepare his defense. Finally in May, 1918, when both indictments were set for trial, a motion was made to quash both, based, as

far as concerned the Erie indictment, upon the ground
that the grand jury had considered the subject of that
indictment, not of its own motion, but upon the sugges-
tion of the district attorney without any previous au-
thority given him by the court. The motion was further
supported by the assertion that the presentment of a true
bill by the Erie grand jury was not made "from the
personal knowledge of any of the grand jurors, nor from
the testimony of witnesses sent before the said grand jury
by leave of, or by order of the court"; that "the knowl-
edge upon which said presentment was so made, came to
said grand jury 'through the evidence of certain wit-
nesses' called before said grand jury by the United States
attorney without the order or permission of the court and
the subject matter of said presentment was not called to
the attention of, or given in charge or submitted to, the
grand jury by the court." In addition, the motion averred
that the thirty counts included in the Erie indictment
covered the same offenses which were embraced by the
thirty counts as to which the Pittsburgh grand jury had
failed to find a true bill, and that the witnesses introduced
by the district attorney at Erie were virtually the same
witnesses previously by him introduced as to the same
charges before the Pittsburgh grand jury.             -

The motion as to the Pittsburgh indictment was re-
jected and we put it out of view. That as to the Erie
indictment was granted on the ground that the district
attorney had no authority, after the action of the Pitts-
burgh grand jury, to resubmit the same matters to the
Erie grand jury without the approval of the court, and
that the Erie grand jury, for the same reason, had no
authority to consider the subject. The court said:

"The resubmission of those matters to the later grand
jury at the Erie term was without the knowledge or ap-
proval of the court. The resubmission of the offenses
against the Government to a new grand jury is a matter of

highest prerogative, and is always subject to the control of the court, and, in proper cases, always granted by the court. . . . Again, it appears . . . that there was a special designation by the Attorney General, of some one, to attend the sessions of the grand jury at Erie and proceed with the investigation.

"We have, then, a subsequent introduction of the same matters to a later grand jury, with the pressure, perhaps, of a specially designated representative of the highest officer in the Department of Justice, without the approval or without the permission of the court, and perhaps to the prejudice of the defendant. . . .

"I am satisfied that the matters in connection with the finding of the indictment at Erie were more than irregularities, and, therefore, I must sustain the motion to quash the indictment found at Erie, and note an exception to the Government.

"The court further wishes to state that the control of the grand jury by common law and by statute law is under the court and the proceedings are under the control of the court.

"Mr. Rush [the district attorney]. May it please the court, the holding, then, of the court, as I understand it, is that the presentation of the case to the grand jury, which has been formerly ignored, would be a bar to a subsequent presentation, unless leave of court were granted.

"By the Court. Without the permission of the court, yes. I think that is the law, and that is what I have stated."

A rehearing was asked on the ground, among others, that if the allowance of the motion to quash were adhered to, the result would be to bar the right of the Government to further prosecute for the offenses charged, as in consequence of the continuances which had been granted and the delay in making the motion to quash, the statute of

limitations would be operative. The rehearing was denied, the court reiterating its previous rulings and pointing out that, as the Pittsburgh indictment had not been quashed, there was opportunity for the Government to prosecute for the offenses therein charged, although its right to further prosecute the offenses charged in the Erie indictment would be lost.

This direct writ of error was then prosecuted under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246, both parties agreeing, for the purposes of a motion to dismiss for want of jurisdiction, which we now consider, that under the circumstances here disclosed the authority to review must depend upon whether the quashing of the indictment was a "decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy."

As it is settled that this question is to be determined, not by form but by substance (*United States* v. *Barber*, 219 U. S. 72, 78; *United States* v. *Oppenheimer*, 242 U. S. 85), it follows that the fact that the ruling took the form of granting a motion to quash is negligible. Testing, then, the existence of jurisdiction by the substantial operation of the judgment, and assuming for the purpose of that test that the United States possessed the right to submit the indictment to the second grand jury without leave of court, which right was denied by the judgment below, we are of opinion that the power to review the judgment is conferred by the provision of the statute quoted, (a) because its necessary effect was to bar the absolute right of the United States to prosecute by subjecting the exercise of that right, not only as to this indictment but as to all subsequent ones for the same offenses, to a limitation resulting from the exercise of the judicial power upon which the judgment was based; and (b) because a like consequence resulted as to the authority of the district attorney and the powers of the grand jury, since the exercise in

both cases of lawful authority was barred by the application of unauthorized judicial discretion.

It is true it is argued that,as the rights which the United States asserted were not possessed, the judgment did not bar the United States or the district attorney or the grand jury from the exercise of any lawful power. But this can only rest upon the assumption, that as there was no error in the judgment there is no power to review it, which, if its premise has any force, will be disposed of by the decision of the merits to which we now proceed.

The Government urges that in the absence of statute of the United States giving such authority, the want of power in the court to quash the indictment for the reasons by it stated is clearly established by the following propositions, which in an elaborate argument it is insisted are made certain by a consideration of the common law, of the statutory law of the United States, of the practices from the beginning, and of the adjudications of this court which settle the question. The propositions are these:

(1) That the power and duty of the grand jury to investigate is original and complete, susceptible of being exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper, and is not therefore dependent for its exertion upon the approval or disapproval of the court; that this power is continuous and is therefore not exhausted or limited by adverse action taken by a grand jury or by its failure to act, and hence may thereafter be exerted as to the same instances by the same or a subsequent grand jury.

(2) That the United States district attorney, in virtue of his official duty and to the extent that criminal charges are susceptible of being preferred by information, has the power to present such informations without the previous approval of the court; and that by the same token the duty of the district attorney to direct the attention of a

grand jury to crimes which he thinks have been committed is coterminous with the authority of the grand jury to entertain such charges.

We do not stop to review or even cite the extensive array of authorities from which the Government deduces these propositions, but content ourselves with referring to the following cases and the authorities therein cited by which the propositions are sustained. *Hale* v. *Henkel*, 201 U. S. 43, 59–66; *Blair* v. *United States*, 250 U. S. 273; and see, with particular reference to the second proposition, *Weeks* v. *United States*, 216 Fed. Rep. 292, 297, 298; *Creekmore* v. *United States*, 237 Fed. Rep. 743; *Abbott Bros. Co.* v. *United States*, 242 Fed. Rep. 751; *Kelly* v. *United States*, 250 Fed. Rep. 947. To do more than to make this reference is unnecessary as in argument the abstract correctness of the propositions advanced by the Government is conceded and the only controversy is as to their application, based upon the insistence that the present case is governed by an exception which exacts the necessity of procuring the prior approval of the court wherever a district attorney presents to one grand jury charges which a previous grand jury has ignored. The existence of this particular exception was expressly declared by the court below to be the basis for its decision. But we think the ruling, although it rested upon the assumption stated, cannot be sustained, since the assumed exception is so incompatible with the general principles governing the subject as to cause it to be, in substance, not an exception at all, but, under the guise of an exception, a mere disregard or repudiation of the principles themselves, for the following reasons: In the first place, because, while admitting the power of the grand jury, it yet denies such power, since it limits the right of that body to inquire by causing it to be unlawful for it to listen, without the approval of the court, to a suggestion of the district attorney under the circumstances stated, and

therefore causes any finding made to depend upon an
inquiry as to the particular source of information which
led to the investigation from which the finding resulted.
In the second place, because, while conceding that the
power of the grand jury is continuous, so that unfavorable
action does not exhaust the authority of that or of another
grand jury to examine, it limits or restrains thereafter the
power of both to do so. In the third place, because, while
the general rule which is stated establishes the authority of
the district attorney as official prosecutor, and makes it,
as we have seen, coterminous with the right of the grand
jury to consider, the exception subjects that authority to
the exercise of a judicial discretion, which, as well illus-
trated by the case under consideration, destroys it. In
the fourth place, because, comprehensively considering
the subject, the assertion of the judicial discretion which
was the basis of the judgment below is incompatible with
the spirit and purpose underlying the admitted principles
as to the power of grand juries, and the right of the
Government to initiate prosecutions for crime, since in
the case stated such powers are controlled, not by a rule
of law, but depend upon a mere exercise of judicial dis-
cretion.

From the point of view of authority, the argument seeks
to establish the existence of the exception upheld by the
court below by a reference to a number of cases decided in
Pennsylvania and in other States.[1] As to the Pennsyl-
vania cases, they undoubtedly support the existence of
the exception, not in virtue of any statutory provision to

---

[1] *Rowand* v. *Commonwealth*, 82 Pa. St. 405; *Commonwealth* v. *Stoner*,
70 Pa. Super. Ct. 365; *Commonwealth* v. *Allen*, 14 Pa. Co. Ct. 546; *Com-
monwealth* v. *Whitaker*, 25 Pa. Co. Ct. 42; *Commonwealth* v. *Priestly*, 24
Pa. Co. Ct. 543; *People* v. *Neidhart*, 71 N. Y. S. 591; *People* v. *Clements*,
5 N. Y. Crim. 288; *People* v. *Dillon*, 197 N. Y. 254; *State* v. *Collis*, 73 Ia.
542; *Sutton* v. *Commonwealth*, 97 Ky. 308; *People* v. *Warren*, 109 N. Y.
615; *Rea* v. *State*, 3 Okla. Crim. 269.

that effect, but solely in contemplation of the common law of the State. But, in view of what we have just said concerning the error upon which the exception rests, its departure from the common law, its conflict with the settled rule applicable in the courts of the United States, as sustained by the decisions of this court, we are unable to accept the doctrine of the Pennsylvania cases as being even persuasively controlling.

As to the cases from other States which are relied upon as sustaining the exception, they are inapplicable because, with one or two exceptions, they rest exclusively upon the provisions of state statutes which on their face show an intention to deviate from the general rule which otherwise would prevail at the common law.[1]

It remains only to consider the contention that, irrespective of the want of persuasive power of the Pennsylvania cases, as the case in hand concerns the prosecution for a crime committed in Pennsylvania, even though it be a crime against the United States, the state rule, in virtue of the provisions of § 722 of the Revised Statutes of the United States, was authoritatively controlling on the court below and is so controlling here. But the section relied upon provides for applying a state rule only where that course is required by an absence of federal rule on the subject. In view of the existence of a. controlling federal rule which would be overthrown by applying the state law, the want of merit in the contention is so self-evident that we leave it without further notice.

The difference between calling into play a discretion for the purpose of prohibiting the performance of duties authorized by law, lest if their performance be permitted, they may be abused, and the exertion of a sound. discre-

---

[1] *People* v. *Warren,* 109 N. Y. 615; *People* v. *Dillon,* 197 N. Y. 254; *Sutton* v. *Commonwealth,* 97 Ky. 308; *State* v. *Collis,* 73 Iowa, 542; *Rea* v. *State,* 3 Okla. Crim. 281.

tion possessed, for the purpose of reasonably regulating the performance of duties by law imposed, serves, in the last analysis, to dispose of the arguments concerning the dangers of abuse of power which may result from a failure to uphold the existence of the discretion which the court below deemed it possessed and upon which its action was based.

As we have exercised jurisdiction to review on the writ of error, the prayer of the United States for the granting of a rule to show cause why mandamus and prohibition should not issue if jurisdiction of the writ of error was not maintained, has nothing now to rest upon and it is denied. It further follows from what we have said on the merits that the judgment below must be and it is

> *Reversed and the cause remanded for further proceedings in conformity with this opinion.*