### UNITED STATES v. LEWIS et al.
### No. 5710.

District Court, E. D. Pennsylvania.
April 18, 1933.

E. W. Wells, U. S. Atty., of Philadelphia, Pa.

Hepburn & Norris, of Philadelphia, Pa., for Lewis.

Harry Shapiro, of Philadelphia, Pa., for Witherow.

Hepburn & Norris, of Philadelphia, Pa., for Roth.

Robt. T. McCracken (of Montgomery & McCracken) and Francis Biddle (of Barnes, Biddle & Myers), both of Philadelphia, Pa., for Wiedersheim.

Walter M. Burkhardt, of Philadelphia, Pa., for Baker.

DICKINSON, District Judge.

#### The Fact Situation.

The defendants feel that they have a real grievance. They have always enjoyed the highest standing in their respective communities. They are engaged in business, or in the practice of professions, in which the maintenance of this high standing is of great value to them. Above all else, their good names are at stake. They complain of a violation of the law which protects them in person and reputation from unfounded accusations, and that no warrant for their arrest can lawfully issue except upon probable cause, supported by the oath of some responsible accuser. They have none the less been arrested, without any one assuming the responsibility of so charging them with the commission of any offense. They complain further that they have the right to be saved the ignominy and

expense of a public trial upon these unfounded charges unless and until some responsible official or tribunal has, upon evidence of probable cause, found that they should be so tried. The fact is that they have been committed or held to bail for such trial, without any evidence against them having been submitted to any official or tribunal.

The extra legal further consequence is that they have been published to the world as guilty of very grave and disreputable offenses, and must be under this, to them, unjust and utterly unfounded accusation, until their innocence is established upon trial, and, even after this, the besmirchment to which they have been subjected will endure.

The defendants aver their ability and readiness to make proof of these averments. Their truth is not denied, and indeed, at least arguendo, admitted, in that the United States attorney contents himself with the averment of the facts that he submitted on his responsibility an indictment to the grand jury, which returned a true bill against the defendants, and that they were taken into custody under a bench warrant which thereupon issued from this court. There can be no denial of these facts, because the indictment and bench warrant are before us.

We are perforce compelled to admit our share in what was done, although no member of the court knew of it until the hearing in this cause. The grand jury must likewise admit its part in what was done, although the members of that well-intentioned tribunal may now learn, for the first time, with perhaps regret, that a true bill was returned without any evidence having been submitted in its support.

One of the defendants sued out a writ of habeas corpus when the situation above outlined was developed. The court felt obliged to remand the relator, and did so. Some of the defendants then moved to quash the indictment and for an inspection of the minutes of the grand jury in order to establish the fact that the indictment had been found without evidence. Afterwards the other defendants filed like motions, all of which we are now asked to dispose of on the paper books submitted.

### Discussion.

We may as a prelude restate the general principles which underlie the questions which arise in this cause. The bitter experience of the people from whom we have inherited much of our law taught them that the power to arrest could not safely be left unregulated. Nearly 300 years ago they did so definitely regulate it in the instrument known to historical students as the Petition of Right, assented to by Charles I of England, although this was no more than a restatement of immemorial law. One of the first acts passed to confirm this in the reign of William and Mary was what is known as the Bill of Rights. Since then the doctrine of the law therein laid down has never been questioned, although it would not be true to say that it has never been violated. The same law has been incorporated in the Constitutions of every state in the Union, usually in the form of a Bill of Rights. It is clearly stated in one of the Ten Amendments, known as the Bill of Rights amendment to our Constitution of 1787. The right as expressed in the Constitution of Pennsylvania (article 1, § 8), and of the United States (Amendment 4) is to the effect that no one can be lawfully arrested except upon probable cause, supported by the oath of some accuser. This right has always been enforced in nation and state (until recently) by a uniform practice which accorded to an accused certain subsidiary rights. These are: (1) That no warrant issued except upon a written complaint under oath setting forth justified grounds for the arrest; (2) the according to the accused a hearing upon the complaint by a committing magistrate; (3) a finding by such magistrate of probable cause, and a commitment of the accused for trial; (4) the right of the accused to challenge the justification of such commitment by habeas corpus, and to get the judgment of the court thereon; and (5) the finding of a true bill by a grand jury.

It will thus be seen that the accused was accorded two rights. One was to a fair trial; the other (a practically more valuable right) was to protection against unfounded charges. Provision was made for exceptional cases in that (1) a grand jury might present any one on its own motion; (2) the prosecuting officer file an information; or (3) might submit an indictment to the grand jury. Informations and submitted bills could only be resorted to, however, by special leave of the court.

The practice recently introduced has changed all this. Four out of five rights which we have listed are denied to the accused, and bills of indictment are submitted to grand juries without leave of court and at the instance of the United States attorney without supervision or control. The only protection left to the accused is the nominal one of a finding by the grand jury. We say nominal because the rule which pertains in the state courts, that the district attorney

may appear before the grand jury only by leave of court, does not prevail in the courts of the United States, and the grand jury has at all times the assistance of the United States attorney and the benefit of his counsel and advice. It is expecting too much of human nature and of grand juries to assume that the latter will act independently of their legal adviser. This means that the only real protection left to the accused is to be found in the fair-mindedness and sound discretion of the United States attorney. This might be a real protection. There is, however, more in the situation. The prosecution of nearly all classes of offenses is committed to a bureau. Justification for their existence depends upon prosecutions brought. The United States attorney cannot very well refuse to submit a bill for which the bureau asks. The representative of the bureau deems it to be his duty to see to it that a true bill is found, and goes before the grand jury to urge it. The protection of the accused is thus reduced to the appeal which his case may make to the considerateness of the investigator of the class of offenses to which it belongs. The experience of the ages has shown the unwisdom of committing the power to prosecute to those whose duty it is to ferret out crime. That "the Sheriff sees every bush a rogue" is proverbial. The selfish interest which the courts have in this new practice is that our lists are cluttered with the trial of cases which the developments of the trial show should never have been brought.

The trial courts are not concerned with the soundness of the new practice but with the questions of law raised by the motions before us. These questions can be best presented in the form of propositions. They proceed upon three facts, all which we assume to be found, if we are at liberty to go into the inquiry, and of which there is no real denial:

(1) The bill of indictment was submitted to the grand jury on the responsibility of the United States attorney without any preliminary complaint, warrant, or hearing; (2) The names of no witnesses were indorsed on the indictment; (3) the grand jury found a true bill without hearing the testimony of any witness or receiving any evidence of probable cause.

The propositions upon which the United States attorney relies are as follows:

█ (1) The United States attorney was exercising a power which belongs to his office in so submitting the bill upon his official responsibility. This proposition must be accepted. It has been so ruled in U. S. v.

Thompson, 251 U. S. 407, 40 S. Ct. 289, 64 L. Ed. 333.

█ (2) The law of the United States does not require the names of witnesses to be indorsed on an indictment otherwise than in indictments for treason and in capital cases.

The requirement does not exist at common law. Jones v. U. S. (C. C. A.) 162 F. 417.

If it exists, it is because of some statute. Barrington v. Missouri, 205 U. S. 483, 27 S. Ct. 582, 51 L. Ed. 890.

It does exist under the state law. What the basis for the rule is we have not been informed. A sufficient one is the act of March 31, 1860 (see P. L. 427, 433, § 10 [19 PS § 731]). By that act the foreman or any member of the grand jury is authorized to administer oaths to any witnesses whose names are indorsed as such on the bill of indictment. The logic of it is that, if the names of no witnesses are indorsed on the indictment, the grand jury cannot swear them. If witnesses are heard, they must have been heard without being sworn, thus invalidating the finding of a true bill. There is a correlative rule under the state law that an indictment is invalidated if a witness testifies whose name is not indorsed upon it. Under the state law, if the names of no witnesses appear, the prosecution would be in this dilemma. Either a true bill had been found without any witnesses being heard or the grand jury heard statements from those who were not lawfully sworn.

█ Neither the state practice nor statutes, however, control indictments in the United States courts. Logan v. United States, 144 U. S. 263, 300, 12 S. Ct. 617, 36 L. Ed. 429; United States v. Murdock, 284 U. S. 141, 52 S. Ct. 63, 76 L. Ed. 210; United States v. Aviles (D. C.) 222 F. 474.

The corresponding United States statute (28 USCA § 420) empowers the foreman to administer an oath to any witness appearing before the grand jury. Moreover, 18 USCA § 562, limits the right of the defendant to a list of the witnesses, to cases of treason and capital offense cases, and then only before trial.

The second proposition must likewise be accepted.

█ Respecting the third fact, it must be considered in the light of the very wise proposition of the law that no disclosure of what appeared before the grand jury can be made.

(3) The third proposition thus is that the proceedings before a grand jury cannot be

disclosed. If we were able to find the fact to be that a true bill was found without any supporting evidence, we would without hesitation allow the motion to quash. We are unable to understand how the fact can be found without a disclosure of what took place before the grand jury. A number of cases have been cited to us which seem to be precedents for a quashing of an indictment on this ground. On careful reading, however, it will be found that every well-considered ruling recognized and applied the doctrine to which we have referred, although in many cases there was a very close approach to the line of distinction. The cases of the presence of an unauthorized person when the indictment was under consideration are illustrations. The indictment shows when it was considered, and, without disclosing what took place before the grand jury, the entrance of an unauthorized person to the room might be shown. We could not, however, find that the grand jury had heard no evidence without a disclosure of their deliberations.

We have accordingly ruled that evidence of who appeared before the grand jury as witnesses and to what they testified cannot be shown.

It has been stipulated that the notes of testimony taken in the hapeas corpus case may be deemed to have been taken on these motions. We admitted the evidence to go upon the record by analogy to Equity Rule 46 (28 USCA § 723), so that on review the whole case would be before the appellate court to be disposed of without a remand for further proceedings. If we are in error in rejecting this evidence, our ruling upon the motions is admittedly wrong. If this evidence is admissible, we find the fact to be that a true bill was returned by the grand jury without any evidence in support of the charge and without any showing of probable cause. All the grand jury had before them was the averments of the indictments and statements of the United States attorney and of an investigator in the employ of the government, neither of whom knew of their own knowledge a single fact bearing upon the case.

We feel we should add the observation that we are not impressed by the excuse offered on behalf of the United States. The excuse is that the grand jury was about to adjourn, and that there was not time to give the grand jury the names of the witnesses nor to have them appear. This does not excuse what was done, but it does emphasize the dangers of the new practice.

There is another fact which we do not find because we have excluded the evidence but which could be found from it, if admitted. We are told that this indictment (which we have not seen) charges irregularities in the transactions of a bank. One of the defendants was taken ill long before the transactions in question, and thereafter did not attend any of the meetings of the board of directors. Whether the minutes show the acceptance of his resignation, we are not informed, but they do show that he was not present when any of the transactions now criticized were under consideration. He was notwithstanding indicted along with the other members and officers of the bank. We do not find that his nonparticipation was intentionally concealed from the grand jury, but we do find that it was not revealed. If alibis are in order, we offer one on behalf of the grand jury. We are assured that they appreciated that in these times to charge any one with participation in bank irregularities is no light matter, and that they would not have found a true bill against this defendant had they known of his absence. We can understand that without this knowledge they would find a true bill, if urged by the district attorney and the government investigator that it was their duty to so do, without scrutinizing very closely what they would regard as mere technical proofs.

There is another comment we feel called upon to make. The United States attorney has taken strange umbrage at the defensive tactics introduced. This is resented as an obstruction of justice. We hope that this does not mean that, after the United States attorney has indicted an accused, all further inquiry into his guilt or innocence is superfluous.

■ Proposition 4 is that the court is without power to review the finding of probable cause after it has been found by a grand jury. This was ruled for us in the Wingert Case, subnom. Ex parte United States, 287 U. S. 241, 53 S. Ct. 129, 77 L. Ed. 283, Opinion of December 5, 1932.

To understand the full import of this ruling, more must be known of it than is disclosed by the report. The United States attorney wished to inaugurate the new practice of which we have spoken. It had been ruled in the Thompson Case that he might without leave of court submit a bill to the grand jury. He would thus have a true bill, but there was no known way of bringing the defendant into court otherwise than by a bench warrant. The United States attorney, before he could inaugurate his new practice, must know

whether he would be able to have a bench warrant issue. His view of it was that he could do so as of course. He very courteously brought the question to the attention of the court. It was arranged for what was in effect a case stated. He presented an indictment upon which the court was willing to issue a bench warrant if assured that probable cause existed. He contended that all required of him was to present the indictment. The question was argued before the court in banc. The court was in doubt respecting its power to refuse a warrant. The question could only be taken to the appellate court after a refusal so the warrant was pro forma refused, accompanied with an opinion expressive of what it was thought would result under the proposed new practice. The United States attorney found or thought the indictment was, for some reason, defective. He thereupon submitted a new bill to the grand jury, and on another true bill a bench warrant was asked for and pro forma refused. A mandamus was applied for and allowed by the Supreme Court, which ruled that the trial court had no control over the issue of the bench warrant, but that it must issue.

We see no escape from the conclusion that the return of a true bill is a finding of probable cause, and that the court has no power to review this finding so as to find otherwise. This, it will be noted, has always been the practice. Before indictment, the courts on habeas corpus heard the evidence, and, if no probable cause appeared, discharged the relator. After indictment found, it was, as we have before pointed out, not the practice to sue out a writ.

An indictment may, of course, be quashed for a defect appearing upon its face or for irregularity. The question here is, as we view it, whether the court can quash an indictment because of a finding by the court of the absence of probable cause and whether the court can inquire into the secrets of the grand jury room as the basis for the finding that a true bill was found without evidence of probable cause.

We answer both questions in the negative.

The questions raised may be restated and summarized as follows:

(1) Where on its face an indictment is not open to attack, and there is no charge of irregularity, may a court inquire into the question of probable cause and make its own finding thereon? We hold it cannot.

(2) Where a motion to quash is grounded upon the averment (as here) that a true bill was found without any evidence to support the finding of probable cause, may the court inquire into the truth of the averment, and, if the fact is found, quash the indictment? We hold that it can, but in making the inquiry the court is bound to observe the other doctrine of the law or rule of policy that the transactions before the grand jury cannot be disclosed or be inquired into.

The real question in the instant case is thus seen to be a very narrow one. A grand jury has the lawful power to return a true bill only upon evidence of probable cause. If a true bill is returned in the absence of any evidence, the indictment should be quashed. If again, however, the fact of no evidence cannot be shown otherwise than by a disclosure of what transpired before the grand jury, the door of inquiry is shut as the fact cannot be thus made to appear.

The motions are all denied, with exceptions allowed to defendants.