**UNITED STATES of America,
Appellant,**

v.

**Ben BLUE, Appellee.**

**No. 20007.**

United States Court of Appeals
Ninth Circuit.

Aug. 16, 1965.

Rehearing Denied Sept. 15, 1965.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Los Angeles, Cal., for appellant.

Ernest Mortensen, Mortensen & Maxwell, Pasadena, Cal., for appellee.

Before JERTBERG, Circuit Judge, MADDEN, Judge, Court of Claims, and DUNIWAY, Circuit Judge.

DUNIWAY, Circuit Judge:

The United States moves that we certify this appeal to the Supreme Court of the United States, pursuant to the provisions of the Criminal Appeals Act, as amended, 18 U.S.C. § 3731. The appellee, Ben Blue, opposes the motion and moves that we dismiss the appeal. We deny Blue's motion and grant the government's motion.

1. *The factual background.*

On August 5, 1964 Blue was indicted on 6 counts. The first 3 counts charge the filing of false and fraudulent income tax returns for the calendar years 1958, 1959 and 1960 (26 U.S.C. § 7201). The other 3 counts charge the filing of false income tax returns on behalf of a corporation, Merry-Go-Round, Inc., for the

same three calendar years. (26 U.S.C. § 7206(1)). On November 24, 1964 Blue filed a motion to dismiss the indictment. The grounds are: In the course of an investigation of the income tax returns of Blue and of the corporation for the years in question, and as early as November 13, 1962, Blue and his counsel were advised that the Internal Revenue Service proposed to recommend criminal prosecution of Blue in connection with the tax returns for the years in question. On April 12, 1963 the Service levied a jeopary assessment against Blue and served him with a so-called 90-day letter, stating the assessment, the claimed deficiencies, and his right to petition the Tax Court for relief. Levies were made on all of his known assets, but these did not produce enough funds to pay the assessments. Within the 90 days, and on July 29, 1963, Blue did file petitions for relief with the Tax Court. These petitions were transmitted to the Enforcement Division of the Internal Revenue Service on October 17, 1963 and from there found their way to the Department of Justice and ultimately into the files of the Assistant United States Attorney handling the prosecution.

### 2. *The trial court's ruling.*

Blue's motion to dismiss the indictment was based upon two principal contentions: (1) that the levying of the jeopardy assessment deprived him of access to all of his assets and thereby prevented him from being adequately represented by counsel and from procuring the services of an accountant in the defense of the criminal charge, and (2) that by tying up all of his assets, the government prevented him from paying the taxes assessed and suing for a refund and, in effect, compelled him to file petitions with the Tax Court in which, in order to present his case to the Tax Court, he was forced to disclose information in violation of his privilege, under the Fifth Amendment to the Constitution, against incriminating himself. The motion is supported by an affidavit of his counsel, and at the hearing various witnesses testified.

At the conclusion of the hearing the court granted the motion but wrote no opinion, the only order in the record being a minute order which reads in pertinent part: " * * * indictment dismissed; defendant discharged; bond exonerated." It found against Blue's first contention, but sustained his second contention.[1]

1. At the conclusion of the hearing, the court first stated that it could not sustain the first contention, because Blue had earnings and earning capacity and so was able to employ counsel and other assistants. It then made the following remarks, among others:

"I am much bothered, however, by the fact that the jeopardy assessment was filed after the Internal Revenue Bureau had decided that it was going to proceed criminally, and was proceeding to investigate him criminally, and levied the jeopardy assessment, and that under the law he is compelled to come forward with whatever proof he has and whatever facts he has concerning the same years and concerning whether or not there was fraud or whether it was wilful in the Tax Court, whether or not that isn't a violation of his right to not be compelled to be a witness against himself.

"The testimony here is that they correlate between the Internal Revenue Bureau and the Department of Justice, and, indeed, it hardly seems necessary that there be any testimony to that effect because it is one Government, and all of the agencies work for one United States of America.

"I read the Boyd case, and I am satisfied that under the Boyd case and under the Heath case in the Ninth Circuit that under the circumstances peculiar to this case, and because the defendant has been compelled and will be compelled to come forward on the same matters as are concerned in this criminal case, to testify against himself, that the court should dismiss the Indictment, and I will dismiss it on that ground alone.

"MR. SCHULMAN [government counsel]: May I ask your Honor just one thing in that regard? If the Government were at this time to advise this court that it has no intention to, nor will it in any way, offer that petition in the Tax Court or any statement attached to it in evidence against the defendant—and I do so make such a representation to this court at this

3. *The sufficiency of the notice of appeal.*

One ground upon which Blue asks us to dismiss the government's appeal is that the notice of appeal does not state the name of any court to which the appeal is taken. The notice does, however, contain all of the material that is required by Rule 37 of the Federal Rules of Criminal Procedure. On the other hand, it does not conform to Rule 10 of the Rules of the Supreme Court, which relate to appeals to that Court. Apparently, counsel who prepared the notice read Rule 37, but did not look at the accompanying Form 26, which contains a recital that the appellant appeals "to the United States Court of Appeals for the ........ Circuit." In fact, on the day the notice of appeal was filed, the Clerk of the District Court forwarded a copy of the notice of

"time, that the Government will not seek to do so—I strenuously do not think that there would be any prejudice to the defendant.

"THE COURT: I do not think that that would change the legal effect of compelling him to come forward in the Tax Court and disclose his tax or have a default taken against him for the taxes and for the fraud penalty. I do not think it would cure that. I think that when the Government set in motion the jeopardy assessment and the 90-Day Letter which compelled him to come forward within a certain time and file his petition in the Tax Court, and then when they did that they foreclosed themselves from proceeding in the criminal case during that time.

"MR. SCHULMAN: Even though nothing which may have been filed by the defendant, and even though he did not raise a question of self-incrimination at that time, and even though the trial has not yet occurred and we don't know if that evidence would be offered or the Government has now said that it is telling the court it would not offer such evidence, and without the admissibility of evidence question your Honor still feels that defendant has been deprived of certain rights?

"THE COURT: I think so, counsel * * * I have held that they have not made a sufficient showing as a matter of fact that he is deprived of his right to employ counsel."

*          *          *          *          *

"MR. SCHULMAN: Very well. In essence—and I certainly don't want to detract from any of the language that your Honor more artfully put in stating your ruling—but in substance then hasn't your Honor said that the making of a jeopardy assessment subsequent to a time when a criminal investigation is under way in and of itself——

"THE COURT: And followed by an Indictment.

"MR. SCHULMAN: ——and followed by an Indictment.——

"THE COURT: Yes.

"MR. SCHULMAN: ——then if there is a jeopardy assessment then in essence your Honor has held that the Government could not indict without violating the rights of the defendant.

"THE COURT: That is right."

*          *          *          *          *

"MR. SCHULMAN: Is your Honor discussing the constitutionality in deciding this?

"THE COURT: No.

"MR. SCHULMAN: You are not saying what rights of the defendant have been violated here."

*          *          *          *          *

"MR. SCHULMAN: This is what confuses me.

"THE COURT: Yes, I have. They have compelled him to come forward and assert in a petition where he is the aggressor, he is the petitioner, and establish facts concerning the very things that are concerned in this Indictment in order to prevent a civil judgment from being taken against him, just as in the Boyd case.

"MR. SCHULMAN: Your Honor did not consider, I assume, the fact that he might have paid the tax rather than file a petition?

"MR. MORTENSON [Counsel for Blue]: With what?

"MR. SCHULMAN: That might well have been a point, your Honor. We have no evidence that he could not have paid the tax instead of filing that petition.

"MR. MAXWELL [Co-counsel for Blue]: They have levied on all his assets, your Honor. That wasn't enough to pay the tax.

"THE COURT: I think the inference can be made from the levying on all of his assets and the fact that there was not sufficient return from the levy to pay the tax, that the inference can be drawn that he did not have sufficient money to pay the tax, and I will draw that inference."

appeal and a statement of the docket entries to the Clerk of this court, as is required by Rule 37(a) (1), and mailed a copy to counsel for Blue, as is also provided in the rule. We think that the failure of the notice to name the court to which the appeal is taken is immaterial, since the appeal normally will come to this court, as the rule itself indicates, and the regular procedure was in fact followed. Our view is strengthened by the fact that the Criminal Appeals Act provides for a transfer of an appeal to the proper court if the appellant should appeal to the wrong court. This, rather than dismissal, is the remedy calculated to assure a just disposition of the case. This is precisely the sort of technical objection that the Rules were designed to eliminate. (Rule 2) We therefore hold that this ground for dismissal is without merit.

4. *The motion that we certify the appeal to the Supreme Court.*

The Criminal Appeals Act lists three sets of circumstances under which an appeal may be taken by the United States direct to the Supreme Court. The third and the only one which could be applicable here reads as follows:

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy."

The government contends that what the court did here was, in essence, to sustain a motion in bar. It is conceded that Blue has not yet been put in jeopardy.

In the first case construing the statute, United States v. Celestine, 1909, 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195, the Court held, without elaboration, that the sustaining of a plea which challenged the jurisdiction of the Federal Court over an Indian, was the sustaining of a special plea in bar. This was followed by United States v. Barber, 1911, 219 U.S. 72, 31 S.Ct. 209, 55 L.Ed. 99. In that case the trial court sustained what was denominated a plea in abatement, the basis of which was that the prosecution was barred by the statute of limitations when the indictment was found. The Court

held that the substance of the action of the Court, and not the label that attached to it, should determine whether the Court's action was the sustaining of a plea in bar. It then laid down the following rule:

"As said by counsel for the government, 'the plea of the statute of limitation does not question the validity of the indictment, but is directed to the merits of the case; and if found in favor of the defendant the judgment is necessarily an acquittal of the defendant of the charge, and not a mere abatement of the action; and it has been universally classed, in both civil and criminal procedure, as a plea in bar and not in abatement.'" (p. 78, 31 S.Ct. p. 211)

This decision was followed in United States v. Oppenheimer, 1916, 242 U.S. 85, 137 S.Ct. 68, 61 L.Ed. 161 and in United States v. Goldman, 1928, 277 U.S. 229, 48 S.Ct. 486, 72 L.Ed. 862.

In United States v. Thompson, 1920, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333, the trial court quashed an indictment on the ground that when a prior Grand Jury had had the case presented to it and refused to indict, the United States Attorney could not then take the matter again to a second Grand Jury and obtain an indictment. The Court held that this amounted to the sustaining of a plea in bar "because its necessary effect was to bar the absolute right of the United States to prosecute by subjecting the exercise of that right, not only as to this indictment, but as to all subsequent ones for the same offenses, to a limitation resulting from the exercise of the judicial power upon which the judgment was based." (p. 412, 40 S.Ct. p. 291)

In United States v. Storrs, 1926, 272 U.S. 652, 47 S.Ct. 221, 71 L.Ed. 460, the defendants, indicted for a conspiracy to use the mails to defraud, pleaded in abatement certain irregularities in the proceedings of the Grand Jury, and the Court dismissed the indictment. The irregularities had nothing to do with the merits—with the right of the government

to prosecute. They could readily be avoided in obtaining a new indictment. At the time of the dismissal the statute of limitations had run. The Court held that the fact that the statute of limitations had run after the indictment was found did not convert the plea in abatement into a plea in bar, and that the plea in abatement did not amount to a plea in bar because it did not look to barring the action, but only to abating it. In the course of his opinion, Mr. Justice Holmes used the following language: "The statute uses technical words, 'a special plea in bar,' and we see no reason for not taking them in their technical sense." United States v. Thompson, supra was distinguished and was said to go "to the extreme point."

The next decision is United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210. Murdock was indicted for refusing to answer questions put to him by an Internal Revenue Agent acting under a summons that had been served upon Murdock. He entered a plea to the indictment, the basis for which was that if he had answered the questions he would have been compelled to become a witness against himself in violation of the Fifth Amendment. The Court sustained the plea and discharged him. The Court said that the effect of the order was "to bar further prosecution for the offense charged," (p. 147, 52 S.Ct. p. 64) and that consequently, it amounted to a plea in bar. It cited all of the foregoing cases except Celestine. In United States v. Hark, 1944, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290, Hark was indicted for violating a maximum price regulation issued under the Emergency Price Control Act of 1942 (56 Stat. 23). The Court granted a motion to quash on the ground that, because the regulation had been repealed subsequent to the offense charged, the defendant could not be prosecuted. This was held to be a bar to the prosecution, and therefore, in substance, a plea in bar, citing Thompson, Barber, and Oppenheimer, supra.

United States v. Hoffman, 1948, 335 U.S. 77, 68 S.Ct. 1413, 92 L.Ed. 1830, involved criminal contempt proceedings against Hoffman based upon a charge that he had violated an injunction prohibiting him from selling used cars at over ceiling prices, in violation of the Emergency Price Control Act. A rule to show cause was dismissed on his motion on the ground that he was entitled to immunity under Section 202(g) of the Act. The jurisdiction of the Supreme Court was sustained under the Criminal Appeals Act, but no party seems to have contended that the order of the Court did not amount to the sustaining of a plea in bar, the only question being whether the United States, as distinguished from the Administrator of the Office of Price Administration, was the plaintiff in the injunction case, and so could appeal.

Finally, there is the decision in United States v. Mersky, 1960, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423. In that case, one of the questions involved was the construction of certain regulations issued by the Secretary of the Treasury under 19 U.S.C. § 1304. A majority of the Court held that a dismissal of the information, based upon the determination of the court below that the acts charged did not violate the regulation, was a decision dismissing the information based upon the invalidity or construction of the statute upon which the indictment or information is founded, this being another ground for direct appeal to the Supreme Court under Section 3731 of Title 18. The majority therefore expressly declined to reach the question whether the action of the trial court also amounted to the sustaining of a motion in bar. Mr. Justice Brennan, with whom Mr. Justice Whittaker agreed, was of the opinion that the Court had sustained a plea in bar because the judgment was one "which will end the cause and exculpate the defendant." He relied upon Hark, Murdock, and Storrs, supra. Mr. Justice Frankfurter and Mr. Justice Stewart, with whom Mr. Justice Harlan concurred, were of the opinion that the Court's decision did not amount to a sustaining of a plea in bar. Mr. Justice Frankfurter relied

upon the Storrs case, supra, feeling that Hark, supra, was wrongly decided. Mr. Justice Stewart was of the same opinion, and at page 457, 80 S.Ct. at page 473, of his dissent, he states the technical history of the concept of a special plea in bar as one which sets up affirmative defenses which would bar the prosecution and he points out that each of the decisions that we have cited above involves action of this character.

This court, in United States v. Apex Distributing Company, 9 Cir., 1959, 270 F.2d 747, held that the mere fact that an order purports to dismiss a criminal proceeding "with prejudice" does not make it the sustaining of a plea in bar, and that the dismissal of an indictment for failure by the government to obey a pretrial order for the production of documents was not the sustaining of a plea in bar. The ground for dismissal in Apex could have been cured by compliance with the pretrial order. Thus the plea was clearly not a plea in bar within the meaning of the statute. In accord is United States v. Heath, 9 Cir., 1958, 260 F.2d 623, at 629ff. There we laid down the rule that "a motion in bar destroys the right of action and bars prosecution." The motion there was similar to that in Apex. The government had lost certain papers of the defendant necessary to his defense. If the government should find them, it could then proceed. Thus the granting of the motion did not destroy the right of action or bar the prosecution.

At first blush, United States v. Brodson, 7 Cir., 1956, 234 F.2d 97 seems squarely in point. There the trial court sustained a motion almost identical to the one here. However, the self-incrimination question was not raised. The court granted the motion on the ground that the jeopardy assessment prevented the defendant from preparing his defense, by depriving him of funds with which to do so. This ground could have been avoided by the government by cancelling the assessment, or by releasing sufficient funds to enable the defendant to defend himself. The Court of Appeals held that this was merely an abatement of the action, not the sustaining of a plea in bar, and declined to certify the appeal to the Supreme Court. It cited Goldman and Murdock, supra, and it specifically distinguished Murdock as being a decision involving a dismissal based on the constitutional guarantee against self-incrimination. We do not think that Brodson is in point. Here, the trial court specifically rejected the ground upon which the trial court in Brodson granted the motion. Here, the court's order was specifically based (see footnote 1, supra) on a violation of the Fifth Amendment privilege against self-incrimination.

██ It is arguable that in this case what the court did was to sustain a plea in abatement because the ground for the motion "has nothing to do with the merits of the criminal actions" (Apex, supra, 270 F.2d 750), but rather arises from an event occurring independently of the finding of the indictment, namely, the filing of the petitions with the Tax Court under compulsion of the jeopardy assessments. On the other hand, the basic facts upon which the order is grounded—the levying of the assessment, and the filing of the petitions in the Tax Court, under compulsion of the assessment—occurred before the indictment was found. Thus, if the theory on which the motion was granted is sound, the indictment was subject to the fatal weakness with which the trial court thought it was infected at the time when the case was in the womb of the Grand Jury, and it carried the taint when it was born. There is no way, as there was in Apex, or Heath or Brodson or Storrs, in which it could be cured. Does not the order then amount to a sustaining of a plea in bar? Does it not "bar the absolute right of the United States to prosecute" (Thompson, supra) or "bar further prosecution of the offense charged" (Murdock, supra)? We think that it does, and that the motion to certify the appeal to the Supreme Court should be granted. If the trial court's views are correct, there is no possible way in which the defect in the indictment can be cured, in this case or in any other indictment that may be found. The decision

thus amounts to an acquittal of Blue. It makes no difference whether the decision was correct. That is what the appeal is about.

Under the Criminal Appeals Act, an appeal does not lie to this court in a case "where a direct appeal to the Supreme Court of the United States is provided by this section." (18 U.S.C. § 3731) We need not, therefore, consider whether, if not appealable to the Supreme Court, the decision could be appealed to this court.

The motion to dismiss the appeal is denied. The motion to certify the appeal to the Supreme Court is granted.