UNITED STATES of America

v.

George P. GAKOUMIS, May H. Gakoumis.

No. Crim. 85–138.

United States District Court, E.D. Pennsylvania.

Aug. 30, 1985.

Edward S.G. Dennis, Jr., U.S. Atty., Joanna M. Jacobs, Asst. U.S. Atty., Philadelphia, Pa., for the U.S.

Robert J. O'Shea, Jr., Marilyn Gelb, Philadelphia, Pa., for defendants.

## MEMORANDUM

DITTER, District Judge.

Defendants in this tax prosecution have filed a "motion to dismiss the indictment due to undue influence" and a "motion to amend and supplement motion to dismiss, application for bill of particulars, and memorandum of law thereto; motion to reconsider denial of co-defendant's motion to inspect grand-jury proceedings." Each of these motions puts into issue matters occurring before the grand jury. Based on my in camera review of the documents and transcripts submitted by the government, and for reasons that follow, these motions will be denied.

The indictment charges defendants with five counts of making false statements on a tax return, in violation of 26 U.S.C. § 7206(1). Specifically, the government contests the validity of deductions taken by Mr. and Mrs. Gakoumis for alleged contributions to the Independent Universal Life Church of Willow Grove, an entity which defendants were instrumental in organizing.

Defendants first contend that the grand jury may have engaged in an unconstitutional inquiry into the religious nature of the church by focusing on the reasons for which it was organized and the manner in which it operated. I have already ruled that this type of inquiry does not offend the first amendment. *See United States v. Gakoumis,* 624 F.Supp. 655 (E.D.Pa.1985) (citing *Hall v. Commissioner,* 729 F.2d 632, 635 (9th Cir.1984); *United States v. Moon,* 718 F.2d 1210, 1226–28 (2d Cir.1983); *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984)). Consequently this ground offers no basis for dismissal of the indictment, and, in turn, no basis for disclosure of the grand jury materials.[1] *See* Fed.R.Crim.P. 6(e)(3)(C)(ii).

Defendants also contend that the government may have engaged in grand-jury shopping and that, if so, the indictment should be dismissed. While the government admits that two grand juries were involved in the investigation of this matter, the transcripts belie defendants' contention that the government shifted the presentation of evidence from the first grand jury to the second grand jury once experience with the first grand jury demonstrated that it was not favorable to the government's position.

■ My in camera review of the transcripts, subpoena records, and the government's affidavit reveals that no grand-jury abuse took place. The first grand jury involved served mainly to subpoena documents, was not offered any substantive evidence on the question of whether Mr. and Mrs. Gakoumis had violated the tax laws, and was not presented with an indictment. The second grand jury heard testimony and considered certain documentary evidence. This grand jury was presented with an indictment, which it returned.

I have serious doubts whether "grand-jury shopping" would ever constitute undue influence justifying dismissal of an indictment. A subsequent grand jury has the power to indict upon a charge that has been considered previously and rejected by a prior grand jury. *See United States v. Schack,* 165 F.Supp. 371, 375 (S.D.N.Y. 1958). *See also United States v. Thompson,* 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333 (1920); *Robert Hawthorne, Inc. v. Director of Internal Revenue,* 406 F.Supp. 1098, 1116 (E.D.Pa.1976) (Becker, J.). It follows that it would be permissible for the government to withdraw from a grand jury's consideration a case to which it does not seem receptive to enable it to present

---

1. In camera review confirms that the grand jury did not rely on impermissible factors to return the indictment.

the case to another grand jury on a subsequent occasion.

Even if a finding of grand-jury shopping could support dismissal of an indictment, it is clear it did not take place here. The first grand jury's term expired while it was still gathering evidence. Once the evidence was assembled, it was presented to the second grand jury, whose term had just commenced. The propriety of having one grand jury subpoena evidence and another grand jury presented with that evidence is beyond question. *See, e.g., Thompson,* 251 U.S. at 407, 40 S.Ct. at 290; *In re Grand Jury Proceedings,* 658 F.2d 782, 784 (10th Cir.1981); *Robert Hawthorne, Inc.,* 406 F.Supp. at 1117–18; *United States v. Kleen Laundry and Kleeners, Inc.,* 381 F.Supp. 519, 522–23 (E.D.N.Y.1979). *See also* Fed.R.Crim.P. 6(e)(3)(C)(iii).

■ Finally, defendants contend that the government exerted undue influence on the grand jury by presenting it with an indictment which had already been signed by the United States Attorney. One reported decision favors defendants' position. In *United States v. Gold,* 470 F.Supp. 1336, 1355 (N.D.Ill.1979), the government could not show that it had not presented a presigned indictment to the grand jury. The district court dismissed the indictment, stressing "that [t]he very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge...." *Id.* (quoting *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)). The *Gold* court concluded that the government conduct in the case made a "mockery of the grand jury system." *Id.*

No other reported decision has gone this far.[2] With all due respect to the *Gold* court, I cannot conclude that the government exerts *any* influence by presenting a pre-signed indictment to the grand jury. The signature of the United States Attorney neither certifies that the indictment is in proper form nor attests to the grand jury's conduct. *See United States v. Cole,* 755 F.2d 748, 757 (11th Cir.1985); *United States v. Cox,* 342 F.2d 167, 171–72 (5th Cir.1965). "Instead, the United States Attorney's signature evidences a recognition that the government attorney has exercised his discretion to permit the indictment to be brought, and demonstrates that he joins the grand jury in commencement of the criminal proceeding." *Cole,* 755 F.2d at 757. *See also United States v. Levine,* 457 F.2d 1186, 1189 (10th Cir.1972). *See generally* Fed.R.Crim.P. 7(c)(1) (requiring the United States Attorney to sign an indictment).

Any alleged undue influence produced by pre-signature presumably stems from the signature's tacit urging that the grand jury return the indictment. While the grand jury serves to protect the innocent against "hasty, malicious and oppressive persecution," *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962), and in theory acts independently of the prosecutor, *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), with time it has been accepted that the government may play a significant role in the presentation of cases to the grand jury. *See generally* 1 C. Wright, *Federal Practice and Procedure* § 101 (1982). That the government wishes the grand jury to return an indictment is readily apparent from the prosecutor's examining witnesses, presenting documents, and summarizing evidence. *See United States v. Kleen Laundry and Kleeners, Inc.,* 381 F.Supp. 519, 521 (E.D.N.Y.1974).

With the government so actively participating in the presentation of a case to the grand jury, any additional suggestiveness produced by pre-signature is somewhere between nonexistent and de minimis. This conclusion is not inconsistent with those cases which focus on matters other than pre-signing to determine whether the pros-

---

**2.** While the Eighth Circuit has suggested that government attorneys not pre-sign an indictment, it has also emphasized that pre-signing alone "is not significant enough to require dismissal of an indictment...." *United States v. Singer,* 660 F.2d 1295, 1302 (8th Cir.1981).

ecution has exerted undue influence over, the grand jury. *See Cole,* 755 F.2d at 757; *United States v. Brown,* 684 F.2d 841, 842 (11th Cir.1982); *United States v. Civella,* 666 F.2d 1122, 1127 (8th Cir.1981); *Singer,* 660 F.2d at 1302; *United States v. Climatemp, Inc.,* 482 F.Supp. 376, 386 (N.D.Ill. 1979), *aff'd mem.,* 705 F.2d 461 (7th Cir.), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983); *United States v. Tedesco,* 441 F.Supp. 1336, 1342 (M.D.Pa. 1977).

Even if pre-signature presents an issue which, if combined with other prejudicial conduct, could warrant dismissal for undue influence, it is apparent from review of the transcripts that no other prejudicial conduct took place in this case.