UNITED STATES of America

v.

**PIKE INDUSTRIES, INC.; Milo L. Pike; and Bruce A. Homer.**

**Crim. Nos. 83-33-1 to 83-33-3.**

United States District Court,
D. Vermont, S.D.

Oct. 7, 1983.

Eugene P. Hanson, and Edward Friedman, Antitrust Div., Dept. of Justice, New York City, for plaintiff.

Jerome F. O'Neill, Manchester & O'Neill, Burlington, Vt., John J. Sheehy, Rogers & Wells, New York City, for Pike Industries and Milo Pike.

David Gibson, Weber, Perra & Gibson, Brattleboro, Vt., Charles A. Stillman, Stillman, Friedman & Shaw, New York City, for Bruce Homer.

## MEMORANDUM OF DECISION

HOLDEN, District Judge.

The grand jury returned an indictment against the defendants on June 29, 1983 charging in Count One a violation of 15 U.S.C. § 1 [1] by conspiring to unreasonably restrain interstate trade and commerce under the Sherman Act. Counts Two and Three charged the defendants with committing mail fraud in violation of 18 U.S.C. § 1341.[2]

Defendants have moved to dismiss Count One of the indictment,[3] arguing that Count

---

1. 15 U.S.C. § 1 provides:

   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

2. 18 U.S.C. § 1341 provides:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, ex-change, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent by the Postal Service, or takes or receives therefrom, any such matter or thing thereon, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

3. The motion to dismiss will be construed as applying to the superceding indictment returned by the grand jury on July 14, 1983. The su-

One fails to allege the element of intent required for criminal violations of section 1 of the Sherman Act. The defendants also have moved to inspect the grand jury minutes to determine whether the grand jury was properly instructed as to the level of intent necessary to indict on all three counts.

The court, for the reasons set forth below, denies defendants' motion to dismiss Count One of the indictment and also denies defendants' motion to inspect the grand jury minutes.

## DISCUSSION

Defendants argue that Count One must be dismissed because it fails to allege that the defendants entered into the conspiracy intentionally, willingly or knowingly. Defendants rely principally on Sherman Act cases [4] in which jury instructions were challenged for the proposition that the indictment must allege an intent to enter into an agreement and an intent to further the objects of the conspiracy. Defendants further argue that the Supreme Court decision in *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), requires the indictment to charge either that the defendants intended their actions to have anticompetitive effects or that they knew their actions would have anticompetitive effects.

The Government responds by arguing that Count One of the indictment alleges sufficiently the intent element necessary under section 1 of the Sherman Act. The gist of the Government's argument is that an express allegation of intent to further the objects of a conspiracy is unnecessary where the indictment alleges a conspiracy. The Government contends that knowledge or intent is implicit in an allegation of conspiracy. The intent to enter into an agreement is included in the allegation that the defendants conspired.

The court rejects defendants' argument. Rule 7(c) of the Federal Rules of Criminal Procedure requires only that the indictment "be a plain, concise and definite written statement of the offense charged." [5] "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), citing *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), and *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98

perceding indictment changes only slightly the original indictment in ways not affecting the motions made by the defendants. The defendants were arraigned before the court on September 16, 1983 and all defendants pleaded not guilty.

**4.** Defendants relied on *United States v. Koppers Co., Inc.*, 652 F.2d 290 (2d Cir.), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981) and *United States v. Cargo Service Stations, Inc.*, 657 F.2d 676, 684 (5th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982) (Government must prove defendants knowingly formed, joined or participated in a conspiracy to fix prices). These cases, however, deal with jury instructions which require a higher degree of specificity than indictments.

**5.** Fed.R.Crim.P. 7(c) provides:

(1) *In General.* The indictment or the information shall be a plain, concise and definite written statement of the offense charged. It shall be signed by the attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to have violated.

(2) *Criminal Forfeiture.* No judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture.

(3) *Harmless Error.* Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

L.Ed. 92 (1953). Defendants challenge the indictment on the grounds that it does not contain all of the elements of the offense charged. Defendants, however, put forth no claim that they have not been fairly informed of the charge against them nor do they assert that an acquittal in this case would not enable them to bar subsequent prosecutions charging the same offense.

■ Count One of the indictment charges the defendants with a violation of section 1 of the Sherman Act.[6] Defendants rely on *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) for the proposition that intent is an element of a criminal prosecution under section 1 of the Sherman Act. In *Gypsum*, the Court held that intent was an element of a criminal offense under the Sherman Act. In a conspiracy two different types of intent were generally required. The first is "the basic intent to agree, which is necessary to establish the existence of the conspiracy, and [the second is] the more traditional intent to effectuate the object of the conspiracy." *Id.* at 443, n. 20, 98 S.Ct. at 2876, n. 20. The Court did, however, note that there were exceptions for conduct regarded as *per se* illegal because of its unquestionably anticompetitive effects. *Id.* at 440, 98 S.Ct.

at 2875 citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Accepting that the conspiracy charge against these defendants requires an intent to agree, the court holds that Count One is sufficient to allege such an intent.

Defendants' reliance on *Gypsum* is misplaced. Since *Gypsum* involved a challenge to jury instructions, it does not stand for the proposition that an indictment must expressly allege intent to form a conspiracy. There is authority sustaining conspiracy indictments which imply knowledge or intent. In *Burroughs v. United States*, 290 U.S. 534, 54 S.Ct. 287, 78 L.Ed. 484 (1934), one of the defendants was indicted for violations of the Corrupt Practices Act and for conspiracy to commit violations of the act. The Court sustained the conspiracy counts of the indictment, holding that "intent ... to evade performance of the statutory duty is clearly enough alleged by the statement that the accused conspired to do so." *Id.* at 544, 54 S.Ct. at 289 citing *Frohwerk v. United States*, 249 U.S. 204, 209, 39 S.Ct. 249, 251, 63 L.Ed. 561 (1919). In *Razete v. United States*, 199 F.2d 44, 50 (6th Cir.), *cert. denied*, 344 U.S. 904, 73 S.Ct. 284, 97 L.Ed. 698 (1952), the court sustained an indictment charging conspir-

6. Count One of the indictment provides in relevant part:

(13) Beginning at least as early as the Spring of 1976 and continuing until about the Spring of 1982, the exact dates being unknown to the grand jury, the defendants and co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce in violation of section 1 of the Sherman Act (15 U.S.C. § 1).

(14) The aforesaid combination and conspiracy consisted of an agreement, understanding, and concert of action among the defendants and co-conspirators, the substantial terms of which were:

(a) to allocate among themselves highway construction projects in the State of Vermont; and

(b) to submit collusive, noncompetitive, and rigged bids to the State of Vermont, or to refrain from bidding, on highway construction projects in the State of Vermont.

(15) For the purpose of forming and effectuating the aforesaid combination and con-

spiracy, the defendants and co-conspirators did those things which they combined and conspired to do, including:

(a) discussing at various clandestine meetings and by phone the submission of prospective bids on highway construction projects in the State of Vermont;

(b) designating the successful low bidder on highway construction projects in the State of Vermont;

(c) submitting intentionally high or complementary bids, or refraining from bidding, on highway construction projects in the State of Vermont;

(d) submitting bid proposals on highway construction projects in the State of Vermont containing false, fictitious, and fraudulent statements and entries; and

(e) agreeing to submit bids above estimate, or to refrain from bidding, on highway construction projects in areas in the State of Vermont in or near which only one of the corporate co-conspirators had a plant or plants.

acy to violate the Espionage Act, stating that "[c]onspiracy to violate law is bottomed in unlawful and willful intention." Similarly, the Tenth Circuit Court of Appeals, in *Madsen v. United States*, 165 F.2d 507 (10th Cir.1948), upheld the sufficiency of an indictment charging the defendants with conspiracy to commit offenses against the United States in violation of the National Motor Vehicle Theft Act, 18 U.S.C. § 88. "It is unnecessary for an indictment to contain such formal words where the allegations thereof necessarily and fairly import guilty knowledge." *Id.* at 509–10. In *Schnautz v. United States*, 263 F.2d 525 (5th Cir.1959), defendants charged with conspiracy to receive, conceal, sell and facilitate the transportation of marihuana (sic) moved to dismiss the indictment because it did not charge that they knowingly and willingly entered into the conspiracy. The court held that the omission of those words from the indictment did not mislead the defendants and stated that the "charge of conspiracy to violate a criminal law has implicit in it the elements of knowledge and intent." *Id.* at 529 citing *Burroughs* and *Frohwerk, supra.* In *United States v. Starr*, 584 F.2d 235 (8th Cir.1978), the court affirmed a district court holding that the failure of an indictment for conspiracy to distribute a controlled substance to include the "words 'knowingly or intentionally' ... [was] not fatal error." *Id.* at 237.

■ In this case the indictment charges that "the defendants and co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of ... interstate trade ... in violation of section 1 of the Sherman Act." The indictment continues:

14. The aforesaid combination and conspiracy consisted of an agreement, understanding, and concert of action among the defendants and coconspirators, the substantial terms of which were:

(a) to allocate among themselves highway construction projects in the State of Vermont; and

(b) to submit collusive, noncompetitive, and rigged bids to the State of Vermont, or to refrain from bidding, on highway construction projects in the State of Vermont.

It appears from the face of the indictment that defendants can hardly claim that the indictment does not fairly inform them of the nature of the charges against them.

In cases decided since the Supreme Court's decision in *Gypsum*, courts have rejected arguments similar to the ones propounded by defendants here. In *United States v. Campbell Hardware*, 470 F.Supp. 430 (D.Mass.1979), the court denied defendants' motion to dismiss an indictment charging them with combining and conspiring to allocate among them architectural hardware projects in Massachusetts, Maine, New Hampshire, Connecticut and Rhode Island in violation of section 1 of the Sherman Act. In contrast to the intent required to be alleged for a substantive offense, the court held that "the conspiracy allegation of this indictment necessarily implies the requisite element of intent." *Id.* at 435. In a similar case, the district court for the Northern District of Illinois denied a Sherman Act defendant's motion to dismiss a conspiracy count for failure to expressly allege intent. *United States v. Climatemp, Inc.*, 482 F.Supp. 376 (N.D.Ill. 1979). The court stated that "[a]lthough the word 'intent' is not specifically used, the requisite mental state of knowledge or intent is implicit in the charge." *Id.* at 382 citing *United States v. Azzarelli Construction Co.*, 459 F.Supp. 146, 149 (E.D. Ill.1978), *affirmed*, 612 F.2d 292 (7th Cir. 1979). Similarly the Third Circuit has held that "*Gypsum* did not alter the long-established rule of law on price-fixing cases that proof of the requisite *mens rea* is satisfied by proof that the defendant formed or joined a conspiracy to fix prices." *United States v. Gillen*, 599 F.2d 541, 545 (3rd Cir.) *cert. denied*, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979). *Accord, United States v. Continental Group, Inc.*, 603 F.2d 444, 461 (3rd Cir.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

■ The indictments against Pike Industries, Milo Pike, and Bruce Homer provide more than a "plain, concise and definite statement" of the charges of bid-rigging. Defendants clearly have notice of the charges against them. The *mens rea* required for a criminal prosecution under section 1 of the Sherman Act is an intent to enter into an agreement in restraint of trade. This court holds that paragraph 14 of the indictment, by charging agreement, understanding and concert of action, sufficiently charges an intent to agree.

■ The defendants also argue that the indictment fails to specifically allege that the defendants intended their actions to have an anticompetitive effect. This argument is contrary to the law in this circuit. The Second Circuit has rejected this argument where the offense charged constitutes a *per se* violation of section 1 of the Sherman Act. *United States v. Koppers*, 652 F.2d 290 (2d Cir.1981). *Koppers* involved a challenge to jury instructions on the question of *per se* violations of the Sherman Act. The court held that once an agreement to rig bids was found, no intent to restrain trade was necessary "[s]ince an agreement to fix prices is by its very nature a restraint on competition within the meaning of § 1 of the Sherman Act...." *Id.* at 295. *Accord, United States v. Cargo Service Stations*, 657 F.2d 676, 681 (5th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Brighton Building and Maintenance Corp.*, 598 F.2d 1101, 1106 (7th Cir. 1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979); *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 316–17 (4th Cir.1982). The holding in *Koppers* refutes defendants' argument.

Defendants have moved, pursuant to Fed.R.Crim.P. 6(e)(3)(C)(ii) [7] to inspect the grand jury minutes relating to the prosecutor's instructions for Counts One, Two and Three. They argue that inspection of the grand jury minutes is essential to insure that the grand jury was properly instructed regarding the intent elements of the offenses charged. Defendants' argument is linked to their argument for dismissal of Count One of the indictment. Defendants believe that there is a substantial possibility that if the prosecutor failed to instruct correctly the jury on the intent element necessary for indicting on Count One, then he also failed to properly instruct the jury on the intent elements necessary for the mail fraud counts.

In response, the Government relies on what it terms "a long standing rule" that courts will not inquire into the grand jury proceedings where the indictment is sufficient on its face. The Government argues that the defendants have not demonstrated the "particularized need" required to entitle them to review of the grand jury minutes. The Government maintains that giving erroneous instructions to the grand jury is not grounds for dismissing the indictment.

■ The Supreme Court has held that disclosure of grand jury minutes under Fed.R.Crim.P. 6(e) should only be made following a "showing of particularized need." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). "From *Proctor & Gamble* and *Dennis* emerges the standard for determining when the tra-

7. Fed.R.Crim.P. 6(e)(3)(C) provides:
   Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—
   (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
   (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.
   If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

ditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). The court is entrusted with substantial discretion to determine whether grand jury transcripts should be released. *Pittsburgh Plate Glass Co., supra,* 360 U.S. at 399, 79 S.Ct. at 1240.

The "particularized need" in this case involves the possibility that the prosecutor gave erroneous instructions to the grand jury. Defendants argue that the indictment is nebulous and therefore the prosecutor must not have instructed the grand jury properly on the element of intent under section 1 of the Sherman Act. The court has already held that the indictment against the defendants is facially valid. Their surmise amounts "to nothing more than unsupported speculation, and this is not enough to constitute a 'particularized need.'" *United States v. Edelson,* 581 F.2d 1290, 1291 (7th Cir.1978). Defendants' reference to a substantial possibility does not meet the requirement of particularized need. Nor has it been shown that an *in camera* inspection of the grand jury minutes would serve the interests of justice. The defendants' motion to review the grand jury minutes is denied.

In summary, the defendants' motion to dismiss Count One of the indictments is denied and defendants' motion to review the grand jury minutes is also denied.

The case will proceed to trial on October 25, 1983, at 9:30 A.M.; trial briefs to be filed on or before October 20, 1983.

It is so ORDERED.