**UNITED STATES of America, Plaintiff,**

v.

**ROSENDIN ELECTRIC, INC., C.V.E., Inc., Louis M. Rosendin, Robert K. Donnelly, and William O. Schafhirt, Defendants.**

**Nos. CR–87–20003–WAI, CR–87–20004–WAI.**

United States District Court, N.D. California.

July 21, 1987.

Joseph P. Russoniello, U.S. Atty., Robert Ward, Chief, Crim. Div., San Jose, Cal. by Christopher S. Crook, Joel S. Sanders, Mark D. Eibert, for plaintiff U.S.

James R. Schwartz, Deputy Atty. Gen., Dept. of Justice, San Francisco, Cal., for State of Cal.

Morrison & Foerster, San Francisco, Cal. by James J. Brosnahan, George Harris, for defendant Louis M. Rosendin.

Morgan, Ruby, Teter, Schofield, Franich & Fredkin, San Jose, Cal. by Allen Ruby, for defendant Rosendin Elec., Inc.

Nolan & Parnes, Palo Alto, Cal. by Thomas J. Nolan, for defendant Schafhirt.

Farella, Braun & Martel, San Francisco, Cal. by Daniel Bookin, for defendant Donnelly.

Irvine & Cooper, Palo Alto, Cal. by David L. Cooper, Penny A. Irvine, for defendant C.V.E., Inc.

## ORDER

INGRAM, District Judge.

This order discusses pending matters concerning the May 14, 1987 order of the Ninth Circuit to hold an evidentiary hearing "for the limited purpose of determining whether [the government] violated Fed.R. Crim.P. 6(d) or 6(e)." These matters include the disposition by this court of documents, including portions of the grand jury transcript, submitted for *in camera* review under this court's order of June 16, 1987 and a determination that inquiry into the activities of Owen Lee Kwong, Deputy Attorney General, Antitrust Section, California Department of Justice, prior to his appointment as a Section 515 Special Assistant to the U.S. Attorney General, pursuant to 28 U.S.C. § 515, in the grand jury investigation is not relevant.

## I. *Introduction*

The procedural history of this case through the first half of June as it relates to the Ninth Circuit's order to hold an evidentiary hearing is set out in this court's last order, filed June 16, 1987. Initially, this order shall update some pertinent procedural occurrences which have transpired since the June 16th order.

On June 25, 1987, Steiny & Company, Inc., pleaded guilty to a one-count criminal information charging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, for submitting a rigged bid for the contract to install and construct traffic signals in the City of San Jose. Judgment was entered on July 1, 1987 and defendant Steiny & Company, Inc. has been fined $600,000 for this violation.[1]

The evidentiary hearing, on whether violations of the grand jury proceedings occurred, commenced on June 30, 1987. Witnesses were sequestered at the request of the defendants. Reporter's Transcript, at 246–48 (June 30, 1987). Also at the request of defendants, this court has ordered that the entire submissions of *in camera* documents by the United States and the State of California be filed under seal. *Id.* at 246. The dates of submission and consideration of the *in camera* materials are considered in section II of this order.

At the June 30th evidentiary hearing, this court granted defendants' oral request for the evidentiary hearing testimony of Thomas Greene and H. Chester Horn, both Deputy Attorneys General, Antitrust Section, California Department of Justice, who were assigned to oversee the state civil action against the defendants. *Id.* at 403–04. At the July 1st hearing, at the request of the State of California, it was ordered that the testimony of Greene and Horn would not be required before July 28, 1987. *Id.* at 444.

On June 30, 1987, the United States and State of California objected, on grounds of relevancy and privilege, to inquiry by the defendants into Mr. Kwong's activities within the Office of the California Attorney General prior to being appointed as a Section 515 Special Assistant to the U.S. Attorney General. *Id.* at 317, 386–87. On July 1, 1987, oral argument was presented on this issue. Resolution of this matter is considered in section IV of this order.

---

1. On November 18, 1986, Howard Electric, Inc. and Theodore Strotman, president and majority owner of Howard Electric, Inc., each pleaded guilty to violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, for participating in a combination and conspiracy to eliminate competition for signals and lighting construction by submitting rigged bids to governmental entities and private developers. Judgment was entered against both defendants on November 20, 1986. Defendant Howard Electric, Inc. was fined $110,000 and defendant Theodore Strotman was fined $10,000 and placed on probation for three years.

The evidentiary hearing has been continued to July 27 and 28, 1987, in order to accomodate the schedule of counsel for defendants. *Id.* at 316, 401.

## II. *In Camera Examination*

On June 16, 1987, this court ruled upon the motions of the United States and of six officials from the California Attorney General's Office to quash the defendants' subpoenas for testimony and documents of present and former government officials. In granting and denying these motions in part, the court ordered the testimony of several named officials to be held at the evidentiary hearing and mandated the production of numerous documents for *in camera* review, including significant portions of the grand jury transcript, and the production of several documents directly to the defendants.

Having reviewed the documents submitted for *in camera* examination, the court HEREBY FINDS that defendants have failed to meet their burden for release of the grand jury materials, and that three specified documents, enumerated below, are relevant and should be released to the defendants. Disposition of defendants' motion for grand jury materials is considered in section III of this order.

### A. *Documents Submitted*

On June 15, 1987, in compliance with this court's initial oral ruling on the motions to quash subpoenas duces tecum at the hearing of June 9, 1987, the United States submitted for *in camera* examination the portions of the grand jury record showing: (1) the identification, by position or role, of Mr. Owen Lee Kwong, Deputy Attorney General, and Mr. Sanford N. Gruskin, Assistant Attorney General, both of the Antitrust Section, California Department of Justice, who were both appointed as Special Assistants to the U.S. Attorney General pursuant to 28 U.S.C. § 515; (2) statements by or to Mr. Kwong or Mr. Gruskin; (3) statements referring to injury suffered by the State of

California or political subdivisions of the state or state taxpayers by reason of the alleged conspiracy; and (4) the presentment of the proposed indictment by the United States to the grand jury for the bid-rigging case, *United States v. Rosendin Electric, Inc. et al.,* No. CR–87–20004–WAI, and the related perjury case, *United States v. Louis M. Rosendin,* No. CR–87–20003–WAI. With this initial package of submitted documents, the United States also provided for *in camera* review several memoranda and letters concerning the application of the federal cross-designation program to this case.[2]

On June 22, 1987, this court received from the United States for *in camera* examination a copy of all of the colloquy in the grand jury. This material was submitted in response to this court's June 16th written order. One week later, the United States also provided a copy to the court of grand jury materials which had previously been disclosed to the defendants pursuant to Fed.R.Crim.P. 16, the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

On June 23, 1987, the state officials submitted some fifty-eight documents for *in camera* review which were responsive to this court's order. The state officials also provided to the defendants a February 9, 1987 press release announcing the filing of the state civil action for alleged bid-rigging and several job descriptions for California Department of Justice officials.

After the court had reviewed the documents submitted for *in camera* consideration, a brief *ex parte* meeting was held with Christopher S. Crook, lead attorney in this action for the United States with the Antitrust Division, San Francisco Office, on June 25, 1987, and with Bruce S. Flushman, Deputy Attorney General, California Department of Justice, representing the state officials, on June 29, 1987. On the morning of June 30th, an *in camera* meeting was held with Mr. Crook and Mr. James

---

**2.** This court's prior order briefly described the federal cross-designation program. *See* Order,

at 17 n. 2 (filed June 16, 1987).

Schwartz, Deputy Attorney General, California Department of Justice, who is representing state officials Owen Lee Kwong and Sanford N. Gruskin during the evidentiary hearing. The purpose of these meetings, none of which lasted more than fifteen minutes each, was to inquire whether either the United States or the State of California would be asserting any privileges, which had been suggested in the papers furnished *in camera*, on the documents which the court was contemplating releasing to the defendants. Ultimately, no privileges were asserted by any of the governmental parties on any of the documents submitted for *in camera* review.

### B. *Documents Released to Defendants*

At the beginning of the hearing on June 30th, the court released three documents to the defendants, which had been subject to *in camera* examination. These documents included: (1) a November 5, 1984 cover letter of Gary R. Spratling, Chief of the Antitrust Division, San Francisco Office, U.S. Department of Justice, to Sanford N. Gruskin, Assistant Attorney General, Antitrust Section, California Department of Justice, and an accompanying brief of the Antitrust Division, U.S. Department of Justice, dated September 6, 1983 in *United States v. American Airlines, Inc.*, No. CA 3–83–0325–D (N.D.Tex.1983). This brief was submitted in opposition to a motion to dismiss or stay due to alleged abuse of the grand jury process in that action. The defendants also received copies of (2) a May 11, 1984 memorandum of Owen Lee Kwong to Sanford N. Gruskin regarding "the consequences of the appearance and participation of a federally deputized state attorney before a federal grand jury." Finally, (3) a third set of materials was released, including a December 16, 1986 confidential memorandum from Sanford N. Gruskin to Andrea Sheridan Ordin, Chief Assistant Attorney General, Public Rights Division, California Department of Justice,

entitled "Highway Bidrigging and Electrical Contractors Investigation." Attached to the Gruskin memorandum was a December 8, 1986 confidential memorandum of Owen Lee Kwong to Sanford N. Gruskin, which addressed the question of whether "a cross-designated State Deputy Attorney General who conducted a Federal Grand Jury [may] have continued access to secret grand jury material and/or use his retained knowledge of the secret grand jury proceedings in a civil action filed by the State, without a court order...." Also accompanying this third set of released materials was a copy of Fed.R.Crim.P. 6 and a January 23, 1980 memorandum to file by Owen Lee Kwong concerning disclosure of grand jury transcripts under Fed.R.Crim.P. 6(e) and section 4F(b) of the Clayton Act, 15 U.S.C. § 15f(b).

The only redaction to any of the materials was made to two paragraphs in the December 8, 1986 memorandum on page one under the "background" heading. The court has determined that this information is not relevant. Furthermore, this material may also be privileged. Reporter's Transcript, at 242 (June 30, 1987). As this court noted during the first day of the evidentiary hearing, this redacted portion of the memorandum does not make reference to anything that occurred before the grand jury. *Id.* at 368. Additionally, Mr. Kwong stated that the stricken portion did not reveal information which was presented to the grand jury, *Id.* at 369, 371–72, and contained no reference to an employee of one of the defendant's companies. *Id.* at 352. The unabridged memorandum is filed under seal with the *in camera* documents.

### III. *Grand Jury Materials*

#### A. *Analytical Framework*

■ In order to overcome a presumption of regularity which attaches to grand jury proceedings,[3] and a general rule of secrecy

---

**3.** *See e.g., United States v. Claiborne,* 765 F.2d 784, 791 (9th Cir.1985), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986); *United States v. Anderson,* 532 F.2d 1218, 1222 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct.

111, 50 L.Ed.2d 107 (1976). *See also United States v. Lisinski,* 728 F.2d 887, 893 (7th Cir.), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); *United States v. Fischbach &*

of matters occurring before the grand jury,[4] the party seeking disclosure of grand jury materials must make a showing of compelling need. *See, e.g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156, 167 (1979). Under Fed.R.Crim.P. 6(e)(3)(C)(i),[5] this showing consists of two independent requirements. First, the court-ordered disclosure must be "preliminary to or in connection with a judicial proceeding." As the Supreme Court has stated, this requirement "govern[s] the *kind* of need that must be shown." *United States v. Baggot*, 463 U.S. 476, 480, 103 S.Ct. 3164, 77 L.Ed.2d 785, 791 (1983) (emphasis in original). *See also In re Barker*, 741 F.2d 250, 254 (9th Cir.1984) ("Under *Baggot*, the proper inquiry is whether the primary purpose of disclosure is to assist in the preparation or conduct of judicial proceedings.").

The second requirement is a showing of "particularized need," *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973, 984 (1966), which is "a criterion of *degree*." *Baggott*, 463 U.S. at 480, 103 S.Ct. at 3167, 77 L.Ed.2d at 791

(emphasis in original). This burden is met when it is shown that: (1) "absent disclosure, injustice will occur in the contemplated proceeding;" (2) "the need for disclosure is greater than the need for continued secrecy;" and (3) the "request is structured to cover only material so needed." *Barker*, 741 F.2d at 255 (citations omitted). *See also United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743, 764–65 (1983); *Douglas Oil Co.*, 441 U.S. at 222, 99 S.Ct. at 1674, 60 L.Ed.2d at 167; *United States v. Fischbach & Moore, Inc.*, 776 F.2d 839, 843 (9th Cir.1985).[6]

### B. *In Camera Examination of Grand Jury Materials*

After considering the papers and oral argument of counsel, this court found that several reasons warranted an *in camera* examination of the grand jury materials. First, the defendants ultimately restricted their request to the following three specified portions of the grand jury materials:

(a) any identification of Mr. Kwong or Mr. Gruskin either as to position or role;

---

*Moore, Inc.*, 576 F.Supp. 1384, 1394 (W.D.Pa. 1983).

**4.** The common reasons for grand jury secrecy were recently reiterated by the Supreme Court:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*United States v. John Doe, Inc. I*, 481 U.S. 102, 107 S.Ct. 1656, 1661 n. 5, 95 L.Ed.2d 94, 106 n. 5 (1987) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077, 1081 n. 6 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954))). *See also Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156, 164–65 (1979); *id.*, 441

U.S. at 222, 99 S.Ct. at 1674, 60 L.Ed.2d at 167 (noting "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activity").

**5.** *See* note 9, *infra*, for reproduction of Fed.R. Crim.P. 6(e)(3)(C)(i) and (ii).

**6.** It has regularly been noted that the showing of "particularized need" is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *John Doe, Inc. I*, 481 U.S. at 116–17, 107 S.Ct. at 1665, 95 L.Ed.2d at 110 (citing *Sells Engineering, Inc.*, 463 U.S. at 445, 103 S.Ct. at 3149, 77 L.Ed. 2d at 766).

Additionally, the Supreme Court has "repeatedly stressed that wide discretion must be afforded to district court judges in evaluating whether disclosure is appropriate." *John Doe, Inc. I*, 481 U.S. at 116, 107 S.Ct. at 1664, 95 L.Ed.2d at 110 (citations omitted). *See also United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir.) (citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959)), *cert. denied sub nom. Moore v. United States*, 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 335 (1985); *United States v. Pike Industries, Inc.*, 575 F.Supp. 885, 891 (D.Vt.1983).

(b) all statements by or to Mr. Kwong or Mr. Gruskin, including but not limited to questions and statements to witnesses and statements to the grand jury; (c) any statements referring to any injury suffered by the State of California or political subdivisions of the state or state taxpayers by reason of the alleged conspiracy.

District Court Order, Attachment A, ¶ 8 (filed June 16, 1987) ("The Federal Schedule" of documents subpoenaed by the defendants).[7] Second, the United States indicated its willingness to submit the grand jury documents for *in camera* review. *See* Government's Response to Defendants' Motion for Discovery of Grand Jury Transcripts and Minutes, at 5–6 (filed May 26, 1987); Reporter's Transcript, at 7, 13 (June 9, 1987) (remarks of United States counsel Christopher S. Crook). Finally, in order to comply with the Ninth Circuit order to hold an evidentiary hearing and to make appropriate findings and also to protect against improper disclosure of the grand jury proceedings, this court concluded that an *in camera* examination was warranted.[8]

## C. *Defendants' Showing of Need*

Defendants have presented two bases for disclosure of grand jury materials under two different subsections of the Federal Rules of Criminal Procedures. *See* Memorandum of Points and Authorities in Support of Discovery of Grand Jury Transcripts and Minutes (filed May 21, 1987); Reporter's Transcript, at 43–44 (June 9, 1987) (remarks of defense counsel Max Gillam). First, defendants argue that, under the terms of this court's April 27th order, the defendants will be unable "to show that the integrity of the indictment was affected by the alleged [grand jury] violations" unless disclosure of the grand jury materials is made. Defendants contend that this establishes the "particularized need" showing required for Fed.R.Crim.P. 6(e)(3)(C)(i).[9] Second, defendants point to the Ninth Circuit's remand order to hold an evidentiary hearing claiming that the issuance of this appellate order establishes that "grounds may exist for a motion to dismiss the indictment because of matters occurring be-

---

**7.** Initially, the defendants requested "[a]ll transcripts and minutes of the grand jury proceedings including but not limited to" the three specified portions of the grand jury materials noted in the text of this order. *See* District Court Order, Attachment A, ¶ 8 (filed June 16, 1987) ("The Federal Schedule" of documents subpoenaed by the defendants). This request, however, was subsequently limited to the three areas listed in the subpoena. *See* Reporter's Transcript, at 44–45 (June 9, 1987) (remarks of defense counsel Max Gillam).

As was already noted in the body of this order, the defendants have received portions of the grand jury materials which the United States released under Fed.R.Crim.P. 16, the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**8.** District courts may review grand jury materials *in camera* to ascertain whether Fed.R. Crim.P. 6(e)(3)(C)(i) or (ii) has been violated. The Ninth Circuit has noted that "[a]lthough some district judges have examined grand jury materials in camera prior to ruling on disclosure motions, whether such action is necessary is left to the discretion of the trial judge." *United States v. Ferreboeuf,* 632 F.2d 832, 835 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 368 (1981). *See also, Dennis,* 384 U.S. at 874, 86 S.Ct. at 1851, 16 L.Ed.2d at 986; *United States v. Singer,* 660 F.2d 1295, 1302 n. 15 (8th Cir.1981), *cert. denied,* 454 U.S. 1156,

102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. Shane,* 584 F.Supp. 364, 367 (E.D.Pa. 1984) ("If the court finds that defendants have raised a factual issue as to the use of 'inherently suspect' procedures, the court may then examine the grand jury records *in camera* to determine the fact of the matter.").

In several cases involving such *in camera* review, the district court has denied disclosure of grand jury materials after conducting the *in camera* examination. *See e.g., United States v. Gakoumis,* 624 F.Supp. 655, 656 & n. 1 (E.D.Pa. 1985), *aff'd without opinion,* 802 F.2d 449 (3rd Cir.1986); *United States v. Austin,* 99 F.R.D. 292, 296 (W.D.Mich.1983); *Fischbach & Moore, Inc.,* 576 F.Supp. at 1396; *United States v. Lehr,* 562 F.Supp. 366, 370 (E.D.Pa.1983), *aff'd without opinion,* 727 F.2d 1101 (3rd Cir.1984).

**9.** Under Fed.R.Crim.P. 6(e)(3)(C), it is provided in pertinent part that:

Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury; ....

fore the grand jury" under Fed.R.Crim.P. 6(e)(3)(C)(ii).

### D. *Analysis*

■ This action is currently before the court pursuant to the Ninth Circuit remand order to hold an evidentiary hearing to make appropriate findings on the issue of whether grand jury violations occurred so that the appellate court may rule on a pending motion of the United States to dismiss the appeals or, in the alternative, for summary affirmance. *See* Ninth Circuit Order (filed May 14, 1987). The independent *Baggot* requirement has been satisfied since the "primary purpose of disclosure is ... to assist in preparation or conduct of a judicial proceeding," *Baggot*, 463 U.S. at 480, 481, 103 S.Ct. at 3167–68, 77 L.Ed.2d at 791, or, in the action at bar, the pending appellate litigation.

However, after having conducted an *in camera* examination of the submitted grand jury materials, the court has found no indication of a violation of Fed.R.Crim. P. 6(d) or 6(e). Consequently, the defendants' asserted need for disclosure has not outweighed the need for continued secrecy of the grand jury proceedings or overcome the presumption of regularity in the grand jury proceedings. Reporter's Transcript, at 243–44 (June 30, 1987). Because the *in camera* review has shown that there is neither a "particularized need," which has been demonstrated within the meaning of Fed.R.Crim.P. 6(e)(3)(C)(i), to warrant disclosure of the grand jury materials, nor "grounds ... for a motion to dismiss the indictment because of matters occurring before the grand jury," under Fed.R.Crim. P. 6(e)(3)(C)(ii), defendants' motion for release of the grand jury materials is HEREBY DENIED.

### IV. *The Relevance of the Pre–Grand Jury Activities of Special Assistant Kwong*

■ Having considered the argument of all counsel presented on July 1, 1987 and the papers previously filed on the motion to dismiss the indictment, this court finds that inquiry during the evidentiary hearing into the activities of Owen Lee Kwong prior to his designation as a Section 515 Special Assistant to the U.S. Attorney General under 28 U.S.C. § 515 is not relevant.[10]

---

**10.** Section 515(a), of Title 28, provides:

(a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

(b) Each attorney specially retained under authority of the Department of Justice shall be commissioned as a special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The Attorney General shall fix the annual salary of a special assistant or special attorney at not more than $12,000.

Section 515 is similar to the authority conferred upon the Attorney General to appoint special attorneys pursuant to 28 U.S.C. § 543, but which is not implicated in the case at bar.

Additionally, the court wishes to note that since the court concludes that it is irrelevant to permit inquiry into Kwong's pre-grand jury activities, it becomes unnecessary for the court to consider whether several government privileges may apply. At the hearing on July 1, 1987, the United States claimed the applicability of the law enforcement evidentiary privilege and the informant's privilege. Reporter's Transcript, at 427, 429 (July 1, 1987). The State of California similarly asserted that the law enforcement evidentiary privilege and the work product privilege would be applicable. *Id.* at 430.

Because of the procedural requirement that the Attorney General of the United States or the State of California, or an appropriate designee, review this matter to formally invoke these executive privileges and to specify the risks of disclosure under *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1953) and other related cases, this court noted that it would first rule on the relevancy issue presented on this motion before requiring these procedural requirements to be followed. Furthermore, because of the disposition of this motion on relevancy grounds, it is unnecessary to consider the procedural manner of consideration of claims of government privilege in *United States v. Winner*, 641 F.2d 825 (10th Cir.1981), which was suggested by the defendants at the hearing. *See* Reporter's Transcript, at 411–12, 439 (July 1, 1987).

### A. *Analytical Framework*

As *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1979), the main authority relied upon by defendants, and other cases have noted, ascertaining whether dismissal of an indictment is warranted by the existence of a conflict of interest is not subject to a *per se* rule of dismissal and must be determined by the facts of the case. As the *Gold* court stated this proposition:

> [I]n any given case, whether a prosecutor before a grand jury labors under a conflict of interest and whether his conduct oversteps the bounds of propriety must be determined by a factual inquiry; there is no *per se* rule that bars a government attorney from serving before a grand jury merely because he is from the agency that originated the criminal charges.

*Id.* at 1346 (emphasis in original) (citing *In re Perlin*, 589 F.2d 260, 264 (7th Cir.1978); *United States v. Dondich*, 460 F.Supp. 849 (N.D.Cal.1978)).

The court must therefore consider whether there is a sufficient factual basis at this point in the proceedings which would tend to establish a conflict of interest between Mr. Kwong's activities prior to his appointment as a Section 515 Special Assistant to the U.S. Attorney General, pursuant to 28 U.S.C. § 515, and his service with the grand jury investigation, and which would make relevant an inquiry into Mr. Kwong's pre-grand jury activities.

### B. *Contentions of the Parties*

The defendants contend that Owen Lee Kwong was laboring under a conflict of interest as a result of his duties as a Section 515 Special Assistant participating in the federal grand jury investigation and his pre-grand jury obligations as a Deputy Attorney General, Antitrust Section, California Department of Justice, allegedly serving civil purposes for the state. From this argument the defendants conclude that the mere existence of an ongoing conflict of interest makes Mr. Kwong an unauthorized person before the grand jury in violation of Fed.R.Crim.P. 6(d).[11] *See* Reporter's Transcript, at 414, 416, 417 (July 1, 1987) (colloquy between the court and defense counsel George Harris).

The primary basis for defendants' requested investigation into Mr. Kwong's involvement before his work with the grand jury investigation is the following response of Mr. Kwong during cross-examination at the June 30th evidentiary hearing to a question posed by defense counsel James J. Brosnahan:

> Q. How is it that you were assigned to this case and not some other case?
>
> A. It was a *natural transition* between what I was doing prior to the empanelment of the grand jury and the grand jury itself.

*Id.* at 317 (June 30, 1987) (emphasis added).

The United States essentially argues that Mr. Kwong's pre-grand jury involvement in a previous investigation was terminated before his service with the grand jury investigation, *Id.* at 424, 425, 426, 438 (July 1, 1987), and is not relevant to the issues which the Ninth Circuit has remanded to this court. *Id.* at 425. Additionally, the government contends that the mere fact of civil responsibility does not create a conflict of interest. *See* Government's Response to Defendants' Motion to Dismiss or for Evidentiary Hearing (Motion No. 1), at 7–9 (filed Apr. 9, 1987); Reporter's Transcript, at 425 (July 1, 1987).

### C. *Analysis*

The court finds that extended inquiry into Mr. Kwong's pre-grand jury activities is not relevant for three reasons. First, Mr. Kwong's "natural transition" statement, by his own admission, is based solely on speculation. Second, at this juncture in the proceedings, there is no concrete evidence or indication of an *ongoing* conflict of interest which has been demonstrated

---

11. Fed.R.Crim.P. 6(d) provides:

    Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

which would connect the prior activities of Mr. Kwong with his role before the grand jury. Finally, having reviewed the conflict of interest cases cited by the defendants, the court finds that the facts in the case at bar, at least at this stage of consideration, do not establish grand jury abuse by manipulation or conflict of interest (between Mr. Kwong's pre-grand jury activities and his service as a Section 515 Special Assistant before the grand jury) nor do they rise to the level of gross grand jury abuse which transpired in the cases cited. Each of these contentions is briefly treated below.

### 1. Speculation

During the first day of the evidentiary hearing, Mr. Kwong testified that he was not aware of any reasons for his selection to work on the federal grand jury. *See* Reporter's Transcript, at 317 (June 30, 1987). After the United States and the State of California objected to defendants' line of questioning concerning Mr. Kwong's pre-grand jury activities, the court conducted an *in camera* inquiry to learn more about the claimed privileged information. *Id.* at 318. During this discussion, Mr. Kwong confirmed that his answer as to why he was appointed as a Section 515 Special Assistant to the U.S. Attorney General was based upon his own personal speculation.[12] Speculation, as on the current record before the court, is in-

sufficient to justify the extended inquiry sought by the defendants.

### 2. Failure to Establish an Ongoing Conflict

The defendants' conflict of interest theory in this action, under case law and by their own admission, must rest upon proof of an ongoing or continuing conflict of interest between state and federal objectives during Mr. Kwong's service as a Section 515 Special Assistant to the U.S. Attorney General. *See id.* at 415–18 (July 1, 1987) (colloquy between the court and defense counsel George Harris). At this point in the evidentiary hearing, the record shows a severance in the activity of Mr. Kwong in the previous law enforcement investigation and his service with the grand jury investigation. As United States counsel Joel S. Sanders informed the counsels for the defendants, Mr. Kwong was involved in a multi-agency law enforcement investigation. *See id.* at 11–12, 14, 17 (*in camera* proceedings, June 30, 1987). This investigation did not involve a grand jury investigation or pertain to Mr. Kwong's subsequent assignment to the grand jury investigation which led to the indictment in this case. There is no indication in the record that Mr. Kwong utilized the fruits, if any, of the prior investigation in the grand jury proceedings. Evidence of a potential conflict of interest is not sufficient.[13]

---

12. Without disclosing the nature of Mr. Kwong's activities, the following pertinent colloquy transpired *in camera:*

> The Court: ... Do you know why you were [designated]?
> Mr. Kwong: I don't know specifically why I was designated, but I assume it was because it was a natural transition.
> The Court: This is just an assumption on your part?
> Mr. Kwong: That is correct.
> The Court: Did you ever have a conversation with any person in the Department of Justice, State Department of Justice, that enlightened you on why you were cross designated?
> Mr. Kwong: The State Department of Justice, no.
> The Court: With anybody else?
> Mr. Kwong: Only in general, general terms; I believe with the federal prosecutor.
> ....
> The Court: Did anyone ever tell you that the reason for your cross-designation in this

matter or the result of your becoming involved in that had anything to do with your experience [prior to your appointment]?
> Mr. Kwong: No one in particular particularly stated that.
> The Court: Was your statement on the witness stand just now ·a personal opinion, that you evolved yourself, or was there something that prompted you to have that feeling?
> Mr. Kwong: More of a personal opinion, I believe.
> The Court: Was there any element at all of any direction from anyone with the [prior] investigation in mind?
> Mr. Kwong: I don't recall any, your honor.
> Reporter's Transcript, at 2–3, 3–4 (*in camera* proceeding, June 30, 1987).

13. Additionally, the defendants believe a conflict of interest is further demonstrated in this case by (1) Mr. Kwong's comments to a reporter on December 19, 1986 concerning the possibility of a state civil action after the indictment was rendered, *see* Reporter's Transcript, at 418 (July

### 3. Conflict of Interest Cases

Defendants' primary case, relied upon in support of their position, is *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1979), where the district court found that "a series of prosecutor conduct which in its *cumulative effect* undermined the grand jury process and deprived defendants of their constitutional right to a fair and unbiased grand jury." *Id.* at 1356 (emphasis added).[14] Specifically, in *Gold*, the *conflict of interest* by an Environmental Protection Agency attorney who was appointed as a Special Assistant was created by his *ongoing participation* in the administrative proceedings. Among other things, during

1, 1987) (remarks of defense counsel George Harris); *Id.* at 277, 286–95 (June 30, 1987) (colloquy between Owen Lee Kwong and defense counsel James J. Brosnahan); Memorandum of Points and Authorities (Defendants' Motion No. 1 to Dismiss Indictment or, in the Alternative, for an Evidentiary Hearing), at 12 (filed March 30, 1987); (2) the December 8, 1986 confidential memorandum of Owen Lee Kwong to Sanford N. Gruskin, which was one of three *in camera* documents released by the court to the defendants, and wherein Mr. Kwong recommends two possible courses of action for a civil suit; and, (3) additionally, questions by Mr. Kwong during the grand jury proceedings concerning bid-rigging near the City of Pinole. *Id.* 434–35 (July 1, 1987) (colloquy between the court and defense counsel George Harris); *Id.* 332–33 (June 30, 1987) (colloquy between Owen Lee Kwong and defense counsel James J. Brosnahan).

For purposes of ruling on the present relevancy issue before the court, this evidence does not suggest that these activities bear upon Mr. Kwong's activities *before* his service with the grand jury investigation. None of this evidence references or makes a connection to Mr. Kwong's pre-grand jury assignment.

Because the evidence concerning the City of Pinole has not been shown to be pertinent to the issue of relevancy at bar, the court does not consider the United States' argument that bid-rigging of contracts with municipalities is a violation of federal antitrust law. *See id.* at 441–42 (July 1, 1987) (remarks of United States counsel Joel S. Sanders).

**14.** The court has received mixed signals on the full extent the defendants wish to rely upon *Gold* for their conflict of interest theory. During oral argument in response to a question from the court, defense counsel George Harris stated that defendants "rely on the United States versus Gold case and others that we cited in our brief on the motion when it was raised." Reporter's Transcript, at 416 (July 1, 1987). However, after arguing the applicability of *Gold* in defendants' initial memorandum, *see* Memorandum of Points and Authorities (Defendants' Motion No. 1 to Dismiss Indictment or, in the Alternative, for an Evidentiary Hearing), at 10–12, and after the United States argued that the facts of *Gold* are distinguishable from the case at bar, *see* Government's Response to Defendants' Motion to Dismiss or for Evidentiary Hearing (Motion No. 1), at 7–9 (filed Apr. 9, 1987), defendants appear to have backed away, in part, from *Gold. See* Defendants' Reply Memorandum in Support of Motion to Dismiss Indictment or, in the Alternative, for an Evidentiary Hearing and Discovery (Defendants' Motion No. 1), at 6–7 (filed Apr. 14, 1987). In their reply brief, defendants seem to limit *Gold* factually, contending that both *Gold* and *In re Perlin*, 589 F.2d 260 (7th Cir.1978), cited by the United States, were cases involving federal, not state, agency attorneys where the government demonstrated a particularized need for disclosure of grand jury materials. *See* Defendants' Reply Memorandum in Support of Motion to Dismiss Indictment or, in the Alternative, for an Evidentiary Hearing and Discovery (Defendants' Motion No. 1), at 6.

To the extent that defendants rely upon *Gold*—particularly since it is the primary case noted by the defendants in their papers and at oral argument—the court believes that the defendants construe this case too broadly. *Gold* does not hold, as defendants suggest, that "[w]hen a government attorney has a conflict of interest, that attorney is an unauthorized person barred from grand jury proceeding by Rule 6(d)." Defendants' Memorandum of Points and Authorities on Motion to Dismiss, at 10. To the contrary, *Gold* explicitly cites *Perlin* for the proposition that whether a conflict of interest creates an abuse of the grand jury proceedings is a factual question of determination. *See Gold*, 470 F.Supp. at 1346. After reviewing the legislative history, the Seventh Circuit held that the Special Assistant statute, 28 U.S.C. § 515, under which Mr. Kwong was also appointed as an assistant to the federal grand jury staff, did not create a *per se* rule of disqualification. *See Perlin*, 589 F.2d at 266 (noting "a *per se* rule disqualifying agency counsel from conducting grand jury investigations they have recommended would be contrary to Congressional intent") (emphasis in original).

The court also takes note that defendants now seem to disavow a *per se* conflict of interest rule in their papers. *See* Defendants' Reply Memorandum in Support of Motion to Dismiss Indictment or, in the Alternative, for an Evidentiary Hearing and Discovery (Defendants' Motion No. 1), at 7 (noting, "Defendants do not rely here, however, on such a *per se* rule.") (emphasis in original); Reporter's Transcript, at 414–15 (remarks of defense counsel George Harris) (stating "I think it would be true to say that it was not per se, just because there is a potential conflict, where the cases draw the line is where there is an *ongoing* conflict") (emphasis added).

his participation before the federal grand jury, the attorney "formulated the underlying theory that was articulated by EPA's Administrator." *Id.* at 1347. The court also found that the Section 515 Special Assistant and the Assistant United States Attorney appearing before the grand jury "sought to ... use ... secret grand jury information in the administrative proceeding." *Id.* at 1350. Furthermore, and perhaps *most significant* to the district court, the Special Assistant was found to be an unauthorized person in violation of Fed.R. Crim.P. 6(d) because on seven occasions he had dual alternating roles as a *witness* and *prosecutor* before the grand jury. *See id.* at 1343, 1351–52.[15] Finally, there were several other "aggravating circumstances" which, when considered with all the other grand jury abuses in the case, justified the dismissal of the indictment.[16]

The court is unconvinced by defendants' effort to suggest that the facts in the case at bar may even approach the gross conflict of interest problems raised in *Gold.* At least at this point in the evidentiary hearing, the facts presented in the instant action do not establish the existence of an ongoing conflict of interest by Mr. Kwong between his prior activities and his appointment as a Section 515 Special Assistant before the grand jury.[17]

A consideration of other relevant cases confirms that the mere fact of prior civil involvement by a government attorney does not create a conflict of interest when that attorney is appointed as a Special Assistant and participates in grand jury proceedings. For example, in *United States v. Wencke,* 604 F.2d 607 (9th Cir.1979), the Ninth Circuit found that the fact alone that a Securities and Exchange Commission (SEC) attorney, who filed a civil action against defendants, was appointed as a Special Assistant United States Attorney to participate in subsequent grand jury proceedings did not establish an inherent conflict of interest. In *In re Perlin,* 589 F.2d 260 (7th Cir.1978), the Seventh Circuit found that there was no conflict of interest where a Commodities Futures Trading Commission (CFTC) attorney, who worked on an investigation resulting in an administrative complaint and had recommended a grand jury investigation, was subsequently appointed as a Sections 515 and 543 Special Assistant, appeared before the grand jury investigating the subject of his recommendation, and discussed the grand jury investigation with his CFTC supervisor. Additionally, in a Northern District of California decision, Judge Orrick found that there was no actual conflict of interest where a SEC attorney, who recommended and had been involved in a SEC civil injunctive action and also handled U.S. Department of Justice requests for access to SEC investigative files, was appointed a Special Assistant to the United States Attorney to assist in the presentation of evidence to the grand

**15.** According to the district court, "[t]his fact [of dual roles as grand jury *witness* and *prosecutor* ] establishe[d] a *per se* ground for dismissal of the indictment in this case, even without a showing of prejudice." *Gold,* 470 F.Supp. at 1351 (citations omitted).

**16.** This included, among other things: (1) the withholding of exculpatory evidence from the grand jury, (2) violation of Fed.R.Crim.P. 7(c)(1) by permitting a government attorney to sign the indictment before the grand jury had returned the indictment, and (3) the destruction of material which may have been evidence in the case. *See Gold,* 470 F.Supp. at 1352–56.

**17.** Additionally, this court is not persuaded by *United States v. Catalanotto,* 468 F.Supp. 503 (D.Ariz.1978), also cited, but not argued, by the defendants. *See* Defendants' Motion No. 1 to Dismiss Indictment or, in the Alternative, for an Evidentiary Hearing, at 10. In a motion to quash the indictment against the defendant and to disqualify the entire United States Attorney's Office in Arizona, the district court found there was a strong possibility of the existence of a substantial relation between a private civil case formerly handled by a newly hired Assistant United States Attorney in the Tucson Office and the grand jury proceedings against the defendant, also conducted by the Tucson Office. Significantly, in disqualifying only the Tucson Office of the United States Attorney's Office in Arizona, the district court left open the possibility of prosecution of the defendant by the Phoenix Office. *See id.* at 507 (noting that the court did not believe "disqualify[ing] the entire United States Attorney's Office for the District of Arizona ... is necessary in this case").

jury.[18] *See United States v. Dondich,* 460 F.Supp. 849 (N.D.Cal.1978).[19]

#### 4. Summary

For the aforementioned reasons, this court determines that it is not relevant for defendants to make examination on Owen Lee Kwong's activities prior to his service with the grand jury investigation. The defendants' central question concerns the basis for Mr. Kwong's appointment as a Section 515 Special Assistant to the U.S. Attorney General to work on the grand jury investigation in this case. The defendants may be permitted to make some inquiry into this area concerning what, if any, *rationale* prompted Mr. Kwong's appointment as a Section 515 Special Assistant, but without revelation of the nature of Mr. Kwong's pre-grand jury activities, which this court has determined to be not relevant. Additionally, the defendants may wish to reach some stipulation on this matter with the United States and State of California, as was suggested at the evidentiary hearing.

### V. *Conclusion*

Based on the foregoing, defendants' motion for disclosure of grand jury materials has been DENIED. Defendants' request to inquire into Owen Lee Kwong's activities prior to his appointment as a Special Assistant serving on the grand jury investigation is HELD NOT RELEVANT.

IT IS SO ORDERED.

---

**18.** There are other cases which also support the determination of this court. *See, e.g., United States v. Troutman,* 814 F.2d 1428 (10th. Cir. 1987) (finding no inherent or actual conflict of interest established by the appointment of the state Attorney General as a Section 543 Special Assistant participating in grand jury proceedings against a defendant State Investment Officer who had been advised by the Attorney General on unrelated state matters); *United States v. Reece,* 614 F.2d 1259 (10th Cir.1980) (no finding of conflict of interest to justify dismissal of indictment where a U.S. Department of Agriculture attorney, who previously participated in the investigation of commercial bribery of meat-packing companies, was appointed a Section 515 Special Assistant participating in grand jury proceedings investigating a meat-packing kickback scheme involving a wholesale grocery business). *See also In re April 1977 Grand Jury Subpoenas,* 584 F.2d 1366 (6th Cir.1978) (Edwards, J., and Lively, J., concurring) (noting "[t]here is no inherent conflict of interest in the appointment of a federal attorney assigned to the Internal Revenue Service to assist in or conduct a criminal tax investigation through grand jury proceedings"), *cert. denied sub nom. General Motors Corp. v. United States,* 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979).

**19.** The defendants argue that *Dondich* is not on point because there was no conflict of interest involved since "the SEC civil proceedings had terminated *prior* to [the SEC attorney's] participation in the grand jury investigation. The *opposite* is true in this case, where the state civil complaint was filed *after* the state civil attorney's participation in the grand jury investigation." Memorandum of Points and Authorities (Defendants' Motion No. 1 to Dismiss Indictment or, in the Alternative, for an Evidentiary Hearing), at 11 n. 3 (citation omitted).

There was not as clear a separation in *Dondich* as defendants might wish to portray. Although Judge Orrick noted that the civil proceedings "had been effectively terminated prior to [the SEC attorney's] participation in the grand jury investigation," *Dondich,* 460 F.Supp. at 853, during the appointed Special Assistant's service before the grand jury, a third-party complaint had been filed in a separate but related civil suit against the SEC, the SEC attorney serving as a Special Assistant, and other officials. The court believes that for purposes of establishing a severance it is noteworthy that during the pendency of this civil complaint, the Special Assistant did not appear before the grand jury.